NEBRASKA LOAN & BUILDING ASSOCIATION, APPELLEE, V. JOHN J. MARSHALL ET AL., APPELLANTS.

FILED MAY 5, 1897. No. 7272.

1. **Sheriffs' Sales**: DEPUTY SHERIFFS. When a decree of foreclosure directs that a sale shall be made by the sheriff, his deputy may act for him in appraising the property.

2. ———: APPRAISEMENT: REVIEW. Evidence *held* to sustain the district court in refusing to set aside an appraisement on the ground that it was too low.

APPEAL from the district court of Douglas county. Heard below before AMBROSE, J. *Affirmed.*

*Henry W. Pennock,* for appellants.

*James W. Carr, contra.*

Irvine, C.

This is an appeal from an order confirming a sale of real estate under a decree of foreclosure. Two points are relied on: First, that the appraisement was made by the deputy sheriff, it being claimed that he was without authority in the premises; and second, that the appraisement was too low. These points were both preserved by a motion to set aside the appraisement filed before the sale. (*Vought v. Foxworthy*, 38 Neb., 790.)

The decree directed that the sale should be made by the sheriff, and the first objection raises the question as to whether in such case the deputy may act in making the appraisement. We do not understand that the deputy's authority to act in matters other than the appraisement is questioned, but the argument is that the appraisement is a judicial act to be performed by the officer in conjunction with two freeholders appointed for that purpose, and that therefore the officer's authority cannot be delegated to his deputy. The question is one of statutory construction. Chapter 24 of the Compiled Statutes relates to deputies, and the first six sections embrace an act originally passed in 1858, entitled "An act providing for the appointment of deputies." (Session Laws, 1858, p. 217.) By the first section it is provided that certain officers may appoint deputies, and the manner of their appointment and removal is specified. Section 2 is as follows: "In the absence or disability of the principal the deputy shall perform the duties of his principal pertaining to his own office, but when an officer is required to act in conjunction with or in place of another officer, his deputy cannot supply his place." Section 893 of the Code of Civil Procedure is as follows: "Any duty enjoined by this Code upon a ministerial officer, and any act permitted to be done by him, may be performed by his lawful deputy." This section was also enacted with the

Code in 1858. (Session Laws, 1858, p. 211, sec. 611.) It was passed subsequently to the statute relating to deputies, but we do not think that the two provisions are in conflict, and the legislature which enacted both undoubtedly intended that they should stand and be construed together. As a matter of principle the construction does not seem difficult. Section 2, chapter 24, Compiled Statutes, was not intended to provide generally the powers of deputies. Were it so intended it would deprive the deputy of all power to act except during the absence or disability of his principal. The general purpose of providing deputies to officers is not to provide an officer who may act during the absence or disability of the principal, but it is to provide the principal with necessary assistance. The deputy acts in the name of the principal, and his acts bind the principal, and this whether or not the principal is present. It seems clear that the statute referred to had for its object the extension of the deputy's powers so as to enable him to take charge of the office and act as the principal during the latter's absence or disability. So construed the provision that he may not supply the place of his principal when the latter is required to act in conjunction with another officer is limited by the main purpose of the section. Many of the officers named in the first section are *ex officio* members of boards upon which the performance of special duties are enjoined, and the legislature for some reason deemed it wise to permit only the principal to act in such matters, and should he be absent or be incapacitated from acting, the deputy, who generally supplies his place and becomes for the time being the principal officer, is prohibited by this limitation from occupying the *ex officio* office on the board. Section 893 of the Code generally empowers deputies to do any acts which the law requires or permits the officer to do, providing he be a ministerial officer. Section 491*a*, and the following sections of the Code of Civil Procedure, provide for the appraisal of lands levied on upon execution, and are ex-

tended by construction so as to apply to sales under decrees of foreclosure. They require the officer levying the execution to call an inquest of two disinterested freeholders and the officer and the freeholders together make the appraisement. By section 852 of the Code foreclosure sales "shall be made by a sheriff or some other person authorized by the court," and where the sheriff shall make such sale he acts in his official capacity by the express terms of the statute. It follows that the duty of executing such a decree is an official duty of the sheriff, and that under section 893 it may be performed by his deputy, unless the fact that the appraisers act judicially forbids the application of that section. It is true that this court has many times held that the appraisers act judicially. They are not, however, a court, nor are they judges, and when this court has said that they act judicially, we take it that it has meant merely that to them is committed the exercise of judgment and discretion in making the appraisement, and that their determination of the matter is final unless seasonably and regularly set aside. The execution of a decree of foreclosure is in its nature a ministerial act and certainly the officer performing that act is a ministerial officer within the meaning of section 893. He is none the less a ministerial officer and his acts are none the less ministerial, as that term is generally used, because at one stage of the proceeding there is committed to him the exercise of a discretionary power requiring a decision of facts. It is impossible to entirely separate so-called ministerial and judicial functions. If it were not that the exercise of judgment and discretion are frequently required in the performance of ministerial duties, a considerable saving of human energy, if not money, might be effected by manufacturing machines which would perform such duties as well as men. For the reasons indicated we think that the statutes taken and construed together in the light of principle permit a deputy to make the appraisement.

The determination of the question is, however, ren-

dered somewhat difficult from the fact that the act of
1858, with regard to deputies, was evidently modelled
upon a statute of Iowa to the same effect.   Our statute
is not a copy of the Iowa statute, but it is a somewhat
close paraphrase thereof, and section 2 appears verbatim
in the Iowa act.   Construing this act in 1853, the supreme
court of Iowa held that the section corresponding to our
section 2 forbade a deputy sheriff to act in conjunction
with the county judge in correcting a jury list; that is,
it placed upon the exception in section 2 a broad con-
struction applying to all acts and not limited merely to
those performed during the absence or disability of the
principal where the deputy acts as principal and not
merely as deputy.   (*Dutell v. State*, 4 G. Greene [Ia.], 125.)
This construction was followed as late as 1875 in *State v.
Brandt*, 41 Ia., 593.   The first case having been decided
before our statute was adopted, a familiar rule of con-
struction would require us to follow that decision here
regardless of our own views as to the meaning of the
statute.   But we do not find from any of the decisions
referred to in Iowa, or from an examination of the Code
of that state, that there existed there any general pro-
vision corresponding to section 893 of our Code.   Two
provisions having been enacted by the same legislature,
the force of the rule whereby the judicial construction
placed upon one of them by another state is presumed
to have been in the mind of the legislature largely fails.
The effect of section 893 was to indicate a legislative
intent to restrict section 2 of chapter 24 to cases of the
absence or disability of the principal, and in view of the
enactment of section 893, we think that this logical con-
struction should be given the other section.   We are the
more ready to depart from the apparent authority of the
early Iowa case because of the fact that in *Moore v. Mc-
Kinley*, 60 Ia., 367, the Iowa court reconsidered the statute
corresponding to our chapter 24, and placed upon it pre-
cisely the construction which we have indicated, at the
same time holding that a deputy clerk might, in the pres-

ence of the principal, approve a stay bond. That court also held, construing the same act, that a deputy clerk might take the acknowledgement of a deed. (*Abrams v. Ervin*, 9 Ia., 87.) It would seem as if the taking of such an acknowledgement and the determination of the sufficiency of a stay bond were as much judicial in their character as the making of an appraisement.

In support of the second contention of appellant, there were introduced in evidence in the district court some sixteen affidavits as to the value of the property, placing it considerably higher than the appraisement. There were no counter-affidavits, but it must be remembered that the burden was upon the appellants to set aside the appraisement; that the appraisers themselves acted upon oath, and that the appraisement was itself equivalent to the oaths of three witnesses as to value. While the preponderance of the evidence ascertained merely by count of witnesses was in favor of the appellants, we think there was such a conflict of the evidence that we should not disturb the finding of the district court. The whole matter was one of opinion, and every case of this character brought to this court serves to show how little dependence can be placed upon the opinions of witnesses as to the value of land, especially when expressed in the form of voluntary affidavits without opportunity for cross-examination.

AFFIRMED.