## Morrison et al. *versus* Nellis et al.

1. The Price Act, Act of April 18th, 1853, P. L. 503, and the Act of March 29th, 1832, P. L. 198, are not in *pari materia*. Under the former Act it is not necessary that the order for the sale of the real estate of a minor be made by the court having jurisdiction over the account of the guardian of the minor.

2. Where the sale of the real estate of a minor is made by decree of court, at private sale, under the Price Act, the Supreme Court will not inquire whether the sale was actually for the interest of the minor. The duty of full investigation before making the decree is vested in the Orphans' Court, and the title of an innocent purchaser does not depend on the fidelity or sound judgment of the judges making the decree.

3. Where jurisdiction in the Orphans' Court to make a decree for the sale of the real estate of a minor under the Price Act attaches, as against all persons who are made parties, the purchaser's title is unprejudiced by any error in the proceedings.

4. The Price Act does not require that the decree for the sale of the real estate of a minor at private sale should be made in the presence of the president or law judge of the court. In the absence of evidence that a law judge was not present at the time of making the decree, it is not presumed that the court was held by judges unlearned in the law.

November 15th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas, No. 2, of *Allegheny county :* of October Term 1886, Nos. 242 and 243.

These were two actions of ejectment for three individual interests in a parcel of land situate in the city of Allegheny, Allegheny county, brought respectively by James A. Morrison and Benjamin F. Hastings against A. J. Nellis and others, and. by Richard B. Morrison against the same defendants. Pleas not guilty.

The following are the facts of the case as they appeared on the trial before EWING, P. J.

R. B. Morrison and J. A. Morrison are children of Mrs. Elizabeth Florence Morrison, one of the beneficiaries under the will of Edward Tyler, deceased, and Benjamin F. Hastings is the surviving husband of Elizabeth Morrison Hastings, who, by her last will and testament, devised her interest to him. The two actions were brought to recover the three individual interests in the land in dispute, and, being identical and for the same land, were tried together. Elizabeth Florence Morrison, after the death of Elizabeth Tyler, her grandmother, in 1852, together with her husband, James Morrison, went into possession of the land in dispute, under the terms of the will of Edward Tyler, and remained in occupancy of the same for some time. About 1853, she, together with her husband and children, removed to Washington county, Pennsylvania, to live, where she died in 1855. On November 17th, 1858, Richard Donaldson, who had been appointed guardian of Richard B. Morrison, J. A. Morrison and Elizabeth Morrison, by the Orphans' Court of Washington county, presented his petition to the Orphans' Court of Allegheny county, praying for. permission to sell the land in dispute, setting forth in his petition that it would be to the interest of said minors that the land should be sold at private sale, for $800.00. It was also stated in the petition that James Morrison who held said land as tenant by the curtesy should receive the interest on the mortgage of $700.00 given for the purchase money, so long as he should live. This petition was presented to the court, and an order was made authorizing the said sale. It did not appear in said order that it was made by the President Judge of the said court. There was no application made to the Orphans' Court of Washington county, Pennsylvania, for permission to mortgage or sell said real estate, nor was any permission granted by the said court for any such purpose. There was no schedule of debts exhibited to the Orphans' Court of either county showing the necessity for said sale, nor was there any averment that the court of Washington county had authorized said sale as prayed for, nor was any reason assigned for the said

[Morrison v. Nellis.]

sale, except that it would be to the interest of those interested that said sale should be made.

The life tenant, James Morrison, under the said order and mortgage, was to receive and actually did receive, the interest annually accruing on the said mortgage, until his death in May, 1877.

After the death of James Morrison, the life tenant, the guardian received the money due on the mortgage from the tenants in possession, and filed his account in the Orphans' Court of Allegheny county; but the plaintiffs, the heirs entitled to the said land in dispute, declined to take the fund, alleging that the said sale was as to them null and void. The land by subsequent conveyances became vested in the defendants. The sole question in the case is, did the sale so conducted vest any title in the purchasers?

In the general charge the court instructed the jury, *inter alia*, as follows:—Edward Tyler owned the lot, and in 1828 died, leaving a will, in which he devised one half of it to his wife with power to dispose of it at her death. She undertook to dispose of it during her lifetime, and sold it to one William Cowan; he went into possession of her portion of it in October, 1837, and has been in possession ever since, which would apparently give him title under the Statute of Limitations. The plaintiffs themselves have shown no title to that one half; they are not heirs of Edward Tyler. If Mrs. Tyler took a fee simple in that half and was entitled to convey it away, she has conveyed it. If she did not, and took but a life estate, then at her death that half went to the heirs of Edward Tyler, her husband. The plaintiffs do not claim to be heirs of Edward Tyler. They were heirs of his wife who, it seems, was a second wife.

The other half, however, was devised to a granddaughter of his wife, Elizabeth Florence, who married James Morrison. She died in 1855, owning the half of this lot that had been devised to her by Edward Tyler. She left five children living, two of whom are since deceased, unmarried and without children; another is dead, having married, and devised her interest, or her estate, whatever she had, of all sorts to her husband, Mr. Hastings. The other two are living and are plaintiffs in these suits. The three then represent whatever interest was left in the heirs of Mrs. Morrison, formerly Miss Florence. Richard Donaldson, of Washington county, was by the Orphans' Court of Washington county appointed guardian of those minor children. This was done in 1855. In 1858, he applied to the Orphans' Court of Allegheny county for authority to sell the interest of his wards in this property on the ground that it would be for the interest of his wards to have

it sold. The Orphans' Court granted him that authority and directed him to sell at a fixed price of $800, which was done, and deed made by Morrison, acknowledged in open court and delivered to Mr. Cowan, who then owned the other half of the property conveyed by Mrs. Tyler. It seems he paid $100 and gave his mortgage for $700, the interest payable to Mr. Morrison during his life, and the principal to the children at their father's death; and that money has been paid to Mr. Donaldson. [The plaintiffs claim that the Orphans' Court of Allegheny county had no jurisdiction to decree that sale, and that the sale is void. We are of the opinion that the deed by Mr. Donaldson as guardian under the proceedings in the Orphans' Court of Allegheny county conveying the interests of these minors gave a good title to the purchaser, William Cowan. As Cowan's title it now held by the defendants, your verdict should be for the defendants in each case.] (Assignment of error.)

Verdict for the defendants in both cases and judgment thereon, whereupon the plaintiffs took these writs and assigned for error that portion of the charge included within brackets.

*Fitzsimmons* (*J. W. Hall* and *Robb* with him), for plaintiffs in error.—Under the Act of March 29, 1832, P. L. 198, the Orphans' Court of Allegheny county had no jurisdiction to decree the sale on the petition of the guardian appointed by the Orphans' Court of Washington county.

The Act of April 18th, 1853, (The Price Act), and the Act of 1832 are in *pari materia* and should be construed together: Lane *v.* Nelson, 29 P. F. S. 411; Gordon's Appeal, 12 Norris 365; see also Scott on the Intestate Laws, 304-6; Packer's Estate of Phila. 473; Rhones Orphans' Court Prac. Vol. 1, 525-6; Holt's Estate, 32 Leg. Int. 29.

The jurisdiction of any court exercising authority over a subject may be inquired into in every other court when the proceedings of the former are relied on and brought before the latter by a party claiming the benefit of such proceedings: Elliot et al. *v.* The Lessee of Piersol et al., 1 Peters, 328; Thompson *v.* Tolme et al., 2 Peters, 167; Wilkinson *v.* Leland et al., Id., 62.

No court, however great may be its dignity, can arrogate to itself the power of disposing of real estate without the forms of law. It must obtain jurisdiction of the thing in a legal mode. A decree without notice would be treated as a nullity. And so must a sale of land be treated, which has been made without an order or decree of court, though it may have ratified the sale: Shriver et al. *v.* Lynch et al., 2 How., 66; Pittsburgh *v.* Walter, 19 P. F. S., 366; Painter *v.* Henderson, 7

Barr, 48; Welty *v.* Puffner, 9 Id., 224; Keech *v.* Rhinehart, 10 Id., 242; Dixey's Exr. *v.* Lemong, 13 Wr., 143; Ledom *v.* Lombart, 30 P. F. S., 390.

Jurisdiction of the Orphans' Court is therefore the test: Painter *v.* Hendersons, 7 Barr, 52; Lockhart *v.* Johns, Id., 139; McKee *v.* McKee, 2 H., 231; Torrance *v.* Torrance, 3 P F. S., 510; Gallaher *v.* Collins, 7 Watts, 554: Scott on the Intestate Laws, 366, 367.

The petition must set out facts necessary to give the court jurisdiction: Act of Assembly, March 29, 1832, P. L., Sec. 57; Act of Assembly, June 16, 1836, P. L., Sec. 19; Torrance *v.* Torrance, 3 P. F. S., 511; Swayne *v.* Lyons, 17 P. F. S., 439.

" Courts of limited jurisdiction must not only act within the scope of their authority, but it must appear on the face of their proceedings that they did so, and if it does not so appear all their proceedings are *coram non judice*:" Jones *v.* Jones, 2 Jones, 355; Gordon's Appeal, 12 N., 361; Pry's Appeal, 8 W., 253; Clauser's Estate, 1 W. & S. 215; Bremer *v.* Philips, 9 W. & S., 21; Grace *v.* Kensey, 4 W. N. C., 208; Stovey's Estate, 14 Id., 406.

*W. K. Jennings* (*Thomas Marshall* and *John Barton* with him him), for defendants in error.—The proceedings were under the Price Act, the Act of 1832 does not authorize a private sale of the real estate of a minor; Johnson's Appeal 18 W. N. C., 205.

The two Acts do not interfere with each other. It is true, that nothing in the Act of 1853 should be taken to repeal or impair the authority of any Act of Assembly, but it goes without saying that nothing in any previous Act of Assembly can limit or impair the effect of the Act of 1853: Greenwalt's Appeal, 37 Pa. St., 95; estate of Lucy A. Parker, 7 Phila., 473; In re Pierce et al., 7 Phila., 475.

Mr. Justice TRUNKEY delivered the opinion of the court, January 3d, 1887.

Had the Orphans' Court of Allegheny county jurisdiction to make the decree for sale of the land which was owned by the minors subject to the life estate of their father? If so, there is no evidence to defeat the title of the defendants.

The petition set forth the nature of the title of the minors to the undivided one half of the lot, that it would be for the interest of said minors to sell the same, that the co-tenant in common offered a certain sum which the petitioner regarded a reasonable price, and better, under the circumstances, than could be obtained at public sale, and that the father would release to

the purchaser and accept the use of seven eights of the purchase money.

Clearly, on the face of the petition, the case was within the letter and spirit of the Act of 1853, relating to the sale of real estate. It was presented by the guardian of the children, not to raise money for their education and maintenance, but for the sole reason that it was for their interest to sell the land.

This is not the time and place to inquire whether the sale actually was for the interest of the minors. The duty of full investigation before making the decree, rested on the Orphans' Court, and the title of an innocent purchaser does not depend on the fidelity or sound judgment of the judges of that court. When the jurisdiction attached, as against all persons who were made parties, the purchaser's title is "unprejudiced by any error in the proceedings." The record presents some appearance of undue haste in the inquiring and making of the decree, yet the court may have been well advised of the propriety of the sale. It is unnecessary that the evidence should be made a matter of record. And we note in passing that the courts have so faithfully and wisely performed their duties under the Price Act, that no demand has been heard for its repeal.

The plaintiffs allege that the president, or a law judge, of the court was not present when the decree of sale was made. While it is common to recite the fact of such presence, in the decree, it is not required by the statute. In absence of evidence that no law judge was present it is not presumed that the court was held by judges unlearned in the law alone. It is not singular that the plaintiffs failed to show by the record that the president judge was absent when the decree was made, for the certificate of acknowledgment of the deed by the guardian, of same date as the decree, states that the president of the court was present.

Judgment affirmed.