SEAMAN v. NORTHWESTERN MUT. LIFE INS. CO.[1]

(Circuit Court of Appeals, Eighth Circuit.    April 11, 1898.)

No. 987.

1. FORECLOSURE SALE—NOTICE OF APPRAISEMENT.
    Under Cobbey's Consol. St. Neb. 1891, §§ 5023–5025, no notice of the time and place of the appraisement of real estate to be sold on decree of foreclosure is required.

2. SETTING ASIDE—APPRAISEMENT—WEIGHT OF EVIDENCE.
    An appraisement duly made by two disinterested, sworn freeholders, supported by the opinions of the trial judge and the master, by the affidavits of witnesses, and by the fact that the land has been twice offered for sale for less than the appraisement, and not sold, for want of bidders, will be upheld, although a greater number of witnesses regard it as too low, and a prior appraisement was higher.

[1] Rehearing denied May 26, 1898.

**3. MASTER IN CHANCERY—APPOINTMENT.**
It is not requisite to the validity of an appointment of a standing master that the order of appointment shall be recorded in any book of the court.

**4. SAME—BOND.**
There is no statute or other authority requiring a standing master to give a bond, and, if an order under which he makes a sale of property does not require a bond, the validity of the sale is not affected by the lack of one.

**5. SAME—NOTICE.**
It is no objection to the validity of a sale by a master that a party had no notice of his appointment. His authority to make the sale is derived, not from his appointment as an officer of the court, but from the decree of sale, of which the parties had notice.

**6. SAME—ELIGIBILITY—COLLATERAL ATTACK.**
An order appointing a standing master is impervious to collateral attack on the ground that he is ineligible because he was a clerk of the court or a son of one of the judges. That question can be presented only by a direct proceeding to set aside the order of appointment.

**7. SAME.**
Where a decree of foreclosure appoints a standing master, who is a clerk of the court and a son of the judge, to make a sale, and no appeal is taken from the decree, the authority of the master to make the sale cannot be successfully attacked by a motion to set aside the subsequent appraisement, or by objections to the confirmation of the sale, on the ground that he is ineligible to the appointment, because that would be a collateral attack upon the decree.

**8. JUDGMENT—COLLATERAL ATTACK.**
Jurisdiction to hear and determine a question is not limited to the power to make correct decisions, and the judgments and decisions of courts having jurisdiction are equally conclusive, whether right or wrong, unless challenged by writ of error or appeal, or impeached for fraud.
Philips, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Nebraska.

William A. De Bord (Edmund M. Bartlett and Howard H. Baldridge, on brief), for appellant.
Howard Kennedy, Jr., for appellee.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. This is an appeal from an order of confirmation of a sale made under a decree of foreclosure of a mortgage rendered on December 9, 1895, in favor of the Northwestern Mutual Life Insurance Company, the appellee, and against William T. Seaman, the appellant. The sale was made by E. S. Dundy, Jr., one of the masters in chancery of the court below, on March 20, 1897. On March 18, 1897, the appellant filed a motion to set aside the appraisement on which the sale was based. On May 3, 1897, an order was made denying this motion, and confirming the sale. Counsel for the appellant seek for a reversal of this order on several grounds, which will be considered seriatim:

1. They insist that the order was erroneous because no notice of the making of the appraisement was served on the appellant; but neither the decree, nor the statute under which the appraisement was made, required any such notice. The claim is not that the ap-

pellant had no notice of the suit, or that he had no hearing as to the terms of the decree, but simply that he received no notice of the time and place of the appraisement. He answered the bill. He took no appeal from the decree. He applied for and obtained a stay of proceedings under it, and thereby waived all objections to its terms, and to the proceedings on which it was based. Ecklund v. Willis, 42 Neb. 737, 740, 60 N. W. 1026, and cases cited. In the absence of the statute, no appraisement, and, of course, no notice of an appraisement, would have been requisite to a valid sale. The statute was enacted by the legislature of Nebraska. Cobbey's Consol. St. Neb. 1891, §§ 5023–5025. In order to secure uniformity of decisions, this court implicitly follows the construction of the constitution and statutes of a state given by its highest judicial tribunal, where no question of general or commercial law, and no question of right under the constitution or laws of the United States, is involved. Madden v. Lancaster Co., 27 U. S. App. 528, 536, 12 C. C. A. 566, 570, and 65 Fed. 188, 192. The statute of Nebraska does not in terms call for notice of the making of the appraisement, and the supreme court of that state has decided that a proper construction of this statute requires no such notice. Hamer v. McFeggan, 51 Neb. 227, 70 N. W. 937.

2. It is contended that the appraisement of February 15, 1897, on which the sale was based, and which was $32,000, was too low. In support of this position, the record contains the affidavits of 12 witnesses, and an appraisement at $40,000 made by the master and two disinterested freeholders on September 22, 1896. The lower appraisement stands supported, however, by the opinion of the trial court; by the opinion of the same master and the same free holders on December 19, 1896, that the property was then worth only $31,500; by the fact that this property was twice offered for sale for $30,000, and no sale could be made, for want of bidders; by the opinion of the master and two other freeholders who made the appraisement of February 15, 1897; and by the affidavits of eight witnesses, who testified that the property was worth less than $32,000. This appraisement was made by two disinterested freeholders, under oath. They were called upon to view the property, and to exercise their judgment impartially upon an important question of fact in this suit. Their determination of that question is entitled to every presumption which attaches to a judicial decision. It ought not to be disturbed unless it clearly appears that it was induced by fraud, or that it was the result of such a gross mistake that it would have the effect of a fraud. The opinion of sworn appraisers upon the question determined by them in the discharge of their duty outweighs the ex parte affidavits of many witnesses. The appraisement was not too low. Association v. Marshall (Neb.) 71 N. W. 63, 65; Vought v. Foxworthy, 38 Neb. 790, 57 N. W. 538.

3. It is alleged that the court below erred by excluding from its consideration the evidence of the appellant relative to the value of the property. The allegation does not seem to be founded in fact (80 Fed. 360); and, if it is, the error was without prejudice, and would not warrant a reversal of the order, because the evidence

was clearly insufficient to warrant a disturbance of the appraisement.

4. The objection is strenuously urged that E. S. Dundy, Jr., had no authority to call the appraisers, or to make the sale. It rests upon these facts: On November 23, 1882, E. S. Dundy, Jr., was appointed clerk of the United States district court for the district of Nebraska, and he continued to hold that office until after this sale was made. He was the son of Hon. Elmer S. Dundy, who was the judge of that court until he died, at a date subsequent to the entry of the decree in this case. The act of congress approved on March 3, 1879 (20 Stat. 415, c. 183), provides:

"No clerk of the district or circuit courts of the United States or their deputies shall be appointed a receiver or a master in any case except where the judge of said court shall determine that special reasons exist therefor, to be assigned in the order of appointment."

On January 25, 1886, a number of the attorneys of the district of Nebraska presented a petition to the circuit court for the appointment of E. S. Dundy, Jr., as a standing master in chancery; and the following order was made and filed with the clerk of the court, but was never entered in any of its records:

"U. S. Circuit Court, District of Nebraska.

"On consideration of the annexed petition, it is ordered that E. S. Dundy, Jr., be appointed master in chancery of this court, and that he take and subscribe the oath of office, and file the same with the clerk of this court, within thirty days.

"Leavenworth, Jany. 25, 1886.                    David J. Brewer, Circuit Judge.
                                                 "Elmer S. Dundy, District Judge."

E. S. Dundy, Jr., took, subscribed, and filed his oath of office within the 30 days. By the act of congress approved on March 3, 1887, this provision was made:

"That no person related to any justice or judge of any court of the United States, by affinity or consanguinity, within the degree of first cousin, shall hereafter be appointed by such court or judge to or employed by such court or judge in any office or duty in any court of which such justice or judge may be a member." 24 Stat. 555, c. 373, § 7.

The decree in this case was rendered by Judge Shiras, and it provided that the mortgaged premises should "be sold at public auction by, or under the direction of, a master in chancery of this court." Counsel for the appellee filed a præcipe for a sale by Master Dundy, and the clerk thereupon delivered to him a certified copy of the decree, and he made the sale. It is said that the order appointing E. S. Dundy, Jr., a standing master in chancery, is void, because it was not recorded in any of the books of the court, and that for this reason, and because he gave no bond, he was without authority to sell the mortgaged premises. But his appointment as standing master in chancery was made under rule 82 in equity, which provides, "The circuit court may appoint standing masters in chancery in their respective districts, both the judges concurring in the appointment;" and there is no provision of law or rule of court which makes the recording of such an appointment in a book requisite to its validity. It was complete and effective when it was made and

signed by both the judges, and filed with the clerk.    Polleys v. Improvement Co., 113 U. S. 81, 5 Sup. Ct. 369; Marbury v. Madison, 1 Cranch, 137, 156, 161.    Neither the statute, nor the decree under which the master sold this property, required him to give a bond, and one was not necessary to the legality of his action.

Another position of the counsel for appellant is that Dundy had no authority to act, because the appellant had no notice of his appointment to make this sale.    No one is entitled to any notice of an appointment of a standing master.    That appointment, like the appointment of a clerk or of a court commissioner, is to be made by the court, or by the judge or judges, as the case may be, without notice to any one.    The master is an officer of the court, and no one but the court is entitled to notice or hearing upon the question of his selection.    The appointment of Dundy as a standing master, however, did not of itself empower him to conduct the sale in this case.    He derived that authority from the decree, and the appellant had notice of its rendition, and consented to its terms.    The provision in the decree that the sale should be conducted by a master in chancery of the court empowered any master in whose hands the appellee should place a certified copy of the decree to proceed with the sale. If the appellant objected to the delegation of this power to Dundy, his day in court, his time and place for the hearing of this objection, was when the decree was rendered.    He should then have presented his objections to Dundy, and should then have insisted either that the decree should provide that the sale should be conducted by any master except Dundy, or that it should name some other master to conduct the sale.    The objection that the appellant had no notice of the appointment cannot be sustained, because he had notice of the entry of the decree which appointed him.

The chief ground of objection to Dundy's authority is, however, that he was ineligible to the position of a standing master in chancery, or of a master to conduct this sale, under the acts of congress which we have quoted, because he was the clerk of the United States district court, and because he was a son of the United States district judge.    But that question is not in this case.    He was appointed a standing master in chancery, under equity rule 82, in 1886, by judges in whom was vested the power, and upon whom was imposed the duty, of making the selection and appointment.    He was appointed a master to make this sale in the decree in this suit by the court which had jurisdiction of the parties and of the subject-matter, and full authority to appoint an officer for that purpose.    No motion has ever been made to set aside or modify the order of 1886, by which Dundy was appointed a standing master, or the decree of 1895, by which he was empowered to make this sale.    No appeal was ever taken from that decree, and the time for appeal has long since passed. The objection that Dundy was ineligible to this position was first made in a motion to set aside the appraisement on March 18, 1897, and was renewed in objections to the confirmation of the sale on April 21, 1897.    It was presented in no other way, and these were collateral, and not direct, attacks upon the order of 1886, and the decree of 1895.    The only question which they presented was whether the

86 F.—32

court which made that order and that decree had jurisdiction to hear and determine the questions whether or not Dundy was eligible to the position of standing master, and to the position of master to make this sale. That question is not debatable. The United States circuit court was the court, and the only court, which had original jurisdiction to hear and decide those questions. Its decision might have been reviewed by an appeal from it. Perhaps it might have been modified or set aside by that court on a direct motion for that purpose, but while it stood unchallenged by a direct attack it was conclusive. The question which the appellant now seeks to raise—the question whether or not this decision was erroneous—is not open in a collateral attack. Jurisdiction to hear and determine a question is not limited to the power to make correct decisions, and the judgments and decisions of courts having jurisdiction are equally conclusive, whether right or wrong, unless challenged by writ of error or appeal, or impeached for fraud. Foltz v. Railway Co., 19 U. S. App. 576, 581, 8 C. C. A. 635, 637, and 60 Fed. 316, 318; Board v. Platt, 49 U. S. App. 216, 25 C. C. A. 87, and 79 Fed. 567, 570, and cases there cited. The order must be affirmed, with costs, and it is so ordered.

PHILIPS, District Judge (dissenting). It is conceded by the opinion herein that "the appointment of Dundy as standing master did not of itself empower him to conduct the sale in this case." But it is asserted that the authority of Dundy was derived from the decree of the court ordering the sale, and that the appellant had his day in court to object to this order, and, having failed to do so, he is concluded. The decree of the court was simply that the mortgaged premises should "be sold at public auction by, or under the direction of, a master in chancery of this court." It did not designate Dundy as such master, and therefore, according to my construction of what was the clear intent and purpose of congress in disqualifying the clerk of the court from acting as the master in such special case, the appellant had no reason to understand or believe that Dundy would be designated under the decree of the court as the party to execute the order and make the sale. It does not appear from this record that Dundy was the only master in chancery in that district, and, if it is competent for any master to make such sale without giving the required bond for the faithful performance of his duty, the statute, in my opinion, clearly disqualifies any person to conduct such sale, standing in the relation that the master did to the court. The act of March 3, 1879, declares emphatically that "no clerk of the district or circuit courts of the United States, or their deputies, shall be appointed a master in any case except where the judge of said court shall determine that special reasons exist therefor, to be assigned in the order of appointment." This master was appointed after the enactment of said statute. The order of appointment simply states, "On consideration of the annexed petition," and it is recited in the opinion that these petitioners were members of the bar of the city of Omaha. The act of congress contemplated that there might be special reasons why the interdiction in the preceding part of the act should not apply

to a particular case, and therefore it provided that it might be waived when special reasons, to the satisfaction of the judge, appeared to exist. But the statute, to put up a more specific safeguard against frivolous pretexts for evasion of the legislative intent, required that in such case the judge should assign in the order of appointment the reason therefor. The mere general order of appointment made in 1886 of Dundy as master, based on the petition of the members of the bar, had no reference to his designation to conduct a sale of this land without any assignment of reason then made therefor. The settled purpose of congress to repress what it conceived to be the public evil of favoritism and nepotism in public offices was again emphasized in the act of March 3, 1887, which prohibited the judge of the court from appointing or employing in any office or duty in the court over which the judge presides any person related to him by affinity or consanguinity, within the degree of first cousin. It seems to me that it would practically nullify the express provision of the statute, and wholly thwart its purpose, if the judges of the courts can, upon the mere petition of the members of the bar, without reference to the particular case in which the master is to act in conducting so important a matter as the sale of land, designate the clerk as general master in chancery, and then confer upon such master the important and profitable business of conducting sales of property under a decree which merely directs a master to make the sale. As already stated, congress intended to compel the observance of the statute by requiring the judge, when he does allow such benefits to go to his clerk, to assign in the order therefor a special reason for the designation; and, as already suggested, admitting that the appellant, by counsel, was present in court when the order was made, authorizing a master of the court to make the sale, it cannot be assumed that he understood that counsel for complainant in the decree would, without notice to any one, select the clerk of the court to execute the order. And, as the appellant cannot be assumed to have had notice of Dundy's acting in such capacity until he actually made the sale, the appellant, it seems to me, was in good time with his objection when he made it the ground for setting aside the sale. Until that sale was confirmed by the court, no possible injury could have come to the appellant, upon which he could predicate any complaint as the basis of his appeal. He objected to the sale because it was by a party not authorized by the statute. He objected to its confirmation for the same reason, and when his objection was overruled, and the sale was, notwithstanding, confirmed, he prosecuted his appeal, and asks this court to overrule the action of the circuit court because of this error. As the acts of congress stand for a sufficient reason, and are based upon sound public policy, the court should suffer no evasion of the legislative will.