JOHN THREADGILL v. CHAS. F. COLCORD, *Receiver of the*
*Oklahoma Woolen Mills, a corporation.*

(Filed February 14, 1906.)

1. **RECEIVER'S SALE**—Can be Conducted by a Master in Chancery or Auctioneer Appointed for That Purpose. Under the laws of this Territory where a receiver is appointed by the court, and at the time fixed for the sale the said receiver is necessarily absent from the place of sale, on application of the receiver or any party in interest, the court may appoint an agent for the purpose of conducting the sale; and that sale so made, if otherwise regular, will be confirmed, and such agent will not be required to take oath or give bond, unless so directed by the order appointing him.

2. **NOTICE TO BE GIVEN IN RECEIVER'S SALES.** The statute in relation to the notice to be given in case of sales under execution does not govern in case of receiver's sales. If the court in the decree authorizing the sale orders that notice be given, a compliance with such order is all that is required.

3. **OBJECTIONS TO THE APPOINTMENT OF RECEIVER**—When Should be Made, and How—Who Estopped from Making. A plaintiff who has filed a petition in a court of competent jurisdiction against certain defendants asking to have a receiver appointed, and such receiver is appointed without objection, and the sale is made by said receiver, or by some agent appointed by the court for him, and at such sale the plaintiff is a bidder, and the property is sold to him under his bid, such plaintiff is presumed to take notice of all proceedings and orders taken or made in the case, and is estopped from questioning the appointment of the receiver, or the agent to sell said real estate, in a collateral proceeding.

4. **DECREE OF COURT**—Collateral Attack—Estoppel—Pleading and Practice. When a purchaser at a master's sale under a decree is himself a party to the suit in which the decree was entered, he cannot in a collateral proceeding raise a question as to the irregularity of the decree, but if the decree is irregular so that the

purchaser will not get a good title to the premises purchased by him, his remedy is to apply to the court directly to set aside the decree on that ground.

5. REICEIVERS SALE—Validity—Reversal of Case. Though the case in which the receiver was appointed might subsequently be reversed on appeal, such reversal would not affect the sale if the court had jurisdiction to render the decree, and the fact that the plaintiff in the suit in which the receiver was appointed was himself the purchaser at the receiver's sale would not alter the case. The general rule is that a purchase at a decretal sale made by a court of competent jurisdiction is valid, unless the decree be void, although it may be reversed.

6. CONFIRMATION OF SALE—Order Sufficient, When. In a receiver's sale, where a report of sale is made and filed in the court from which the decree issued, and a motion is made to set aside the sale, and the court after hearing argument of counsel and considering the motion to set aside the sale overruled the motion, and thereupon entered an order that the bidder pay into the hands of the clerk of the court the amount of his bid, and that the receiver make, execute, and deliver to the bidder a deed conveying the real estate purchased, this amounts in làw to a confirmation of said sale, although the court does not say in express language, "I hereby confirm the sale." The order made by the court amounts legally to the same thing, and recognizes tne validity of the sale.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before Bayard T. Hainer, Trial Judge.*

W. F. *Wilson,* and *Grant & McAdams,* for plaintiff in error.

*Flynn & Ames,* and *Hays, Thorp & Thorp,* for defendant in error.

STATEMENT OF FACTS.

In this case, the plaintiff in error, John Threadgill, was the purchaser at a receiver's sale of certain property formerly belonging to the Oklahoma Woolen Mills, of which Charles F. Colcord, the defendant in error, had been appointed receiver. The receiver's sale was made under and by virtue of

an order of the judge of the district court in and for Oklahoma county, the said order being made on the 18th day of May, 1904. The receiver caused the property ordered by the court to be sold to be advertised for sale in the Daily Oklahoman, and Times Journal, two daily newspapers of general circulation, published in Oklahoma county. The plaintiff in error, Threadgill, was a stockholder in the Oklahoma Woolen Mills, and was the plaintiff in the case in which the receiver was appointed. On the day of the receiver's sale, Messrs. Grant & McAdams, as agents and attorneys for Threadgill, appeared at the sale and bïd for the property the sum of twelve thousand dollars ($12,000.00) and this being the highest and best bid then offered, the master, or auctioneer appointed to conduct such sale, declared said property sold to the plaintiff, and immediately demanded of him the payment of the amount of his bid. The plaintiff asked for further time to examine the records as to the title, which was granted. Subsequently, Threadgill, the plaintiff, refused to perform the condition of his bid, and to take the property, claiming that the appointment of the receiver in the case, and the conduct of the sale was irregular, and not in accordance with the statute. On the 20th day of July, 1904, the plaintiff herein moved the court in the case in which the receiver had been appointed, to set aside the receiver's sale. This motion the court denied and ordered that Threadgill pay into the hands of the clerk of the court the sum of twelve thousand dollars, the amount of his bid for said property, and that upon such payment, the receiver make, execute and deliver to Threadgill a deed conveying the property purchased by him at said sale. Upon said order being made by the court, the plaintiff Threadgill refused to comply with such order, whereupon the court ordered that the receiver of the Oklahoma Woolen Mills.

Charles F. Colcord, commence an action against Threadgill to recover the amount of the bid. On the 12th of September, 1904, in accordance with the order made by the court in the case in which the receiver was appointed, an action was commenced in the district court of Oklahoma county by the receiver of the Oklahoma Woolen Mills against John Threadgill, for the recovery of the amount of his bid, and a petition setting up the facts was filed herein to which petition the defendant filed an answer, after which, plaintiff moved for judgment on the pleadings, which motion was granted by the court and judgment rendered in favor of the receiver, and against the plaintiff in error, Threadgill, for the sum of twelve thousand two hundred and seventy and 66|100 dollars (12,270.66), being the amount of the bid on said property, together with seven per cent. interest thereon from the date of the sale. To which finding and judgment, plaintiff in error, Threadgill, excepted, and takes his appeal to this court, and brings the matter here for review.

Opinion of the court by

IRWIN, J.: The first assignment of error is that the said Charles F. Colcord was not eligible as receiver of the Oklahoma Woolen Mills, because a stockholder and director of the corporation, and because a party to the action in which the said receiver was appointed.

Second, that the property was not advertised for sale in accordance with the provisions of the Statute of Oklahoma, relative to judicial sales; third, that the sale was made by a master, or auctioneer, instead of the receiver himself, and that such master or auctioneer gave no bond and took no oath before entering into the discharge of his duties; fourth, that

the sale to Threadgill had never been confirmed by the court, as charged in the order of sale.

We will take these assignments of error up in their inverse order. The fourth assignment of error, to wit: That the sale to Threadgill had never been confirmed, and that for this reason no case could be brought for the purchase money. In answer to this contention, we refer to the record as shown by the case made at page 14, and by this record we find that on the 20th day of July, 1904, the cause came on to be heard in the district court on the motion of plaintiff in error, John Threadgill, who represented that he was a bidder at the sale of the property in controversy, and moved the court to set aside said sale. The court after hearing the argument of counsel, and considering said motion, overruled the same, to which ruling the said John Threadgill, by his attorneys, then and there excepted, and it was ordered by the court that the said John Threadgill pay into the hands of the clerk of this court the sum of $12,000.00, the amount of his bid for said property, and upon such payment the said receiver should make, execute and deliver to the said John Threadgill a deed conveying to the said John Threadgill the real estate purchased by him at said sale. Now we think that this order amounts to an order confirming the sale. It is true, that the court in making the order did not say in express language, "I hereby confirm this sale." but he did say that the motion to set aside the sale should be overruled, and he did say that the motion to set aside the sale should be overruled, and he did say that the bidder should pay the amount of his bid into the clerk of the court and that upon such payment that the receiver should make, execute and deliver a deed for the property sold at that sale. This we think. in law, is equivalent to

an express declaration confirming the same, because it was an express recognition of the validity of the sale, and an order that the necessary steps should be taken to convey the title. From this order there was no appeal by the plaintiff in error Threadgill.

The third assignment is that the sale was made by a master or auctioneer, instead of the receiver himself, and that such master or auctioneer took no oath, and gave no bond before entering into the discharge of his duties. That brings us to the question: Can a receiver's sale be conducted by a master in chancery or auctioneer appointed for that purpose? We find nothing in our statute as to the manner in which a receiver's sale shall be conducted, nor as to who shall have authority to conduct such sale. The record in this case shows that at the time fixed for the sale it became necessary for Colcord to leave the city, thus necessitating a postponement of the sale or the appointment of an agent to conduct it. Upon motion the court ordered the latter to be done, and J. J. Beall was appointed master in chancery for the sole purpose of conducting that sale, and reporting the proceedings to the court. We think that in the absence of any statutory provision relating to the subject, that the court committed no error in allowing a special master or auctioneer to conduct that sale, and that the court had full authority and ample jurisdiction to make such appointment.

In the case of *Swan v. Smith,* 58 Miss. 875, a direct attack was made upon a commissioner's sale, for the reason that it was not made by the commissioner personally, but by an auctioneer during the commissioner's absence from the state, and the court held that if otherwise regular, the sale would be confirmed.

In the case of *Chambers v. Jones,* reported in the 17th Ill. 275, it was held that the fact that a sale under a decree of court was conducted by an agent of the commissioner authorized by the decree to make it, and in the absence of the commissioner, is not such an irregularity as impairs the jurisdiction of the court.

In the case of *Omaha Loan & Trust Co. v. Bertrand,* (Neb.) 70 N. W. 1120, it was there held that the court can appoint a person other than the sheriff special master to make a sale of real estate under a decree.

But, it is contended that the sale is invalid because the master or auctioneer appointed by the court to make the sale of the property gave no bond and took no oath before entering into the discharge of his duties.

Section 4443 Wilson's Statutes of Oklahoma, 1903, provides as follows:

"Before entering upon his duties, the receiver must be sworn to perform them faithfully, and with one or more sureties, approved by the court or judge, execute an undertaking to such person, and in such sum as the court or judge shall direct, to the effect that he will faithfully discharge the duties of receiver in the action and obey the orders of the court therein."

This provision of the statute relates solely to the giving of a receiver's bond. And it is nowhere contended in the briefs of counsel, nor does this record show in this case but that such provision was fully complied with; and we have searched the statutes in vain, to find anywhere any provision that a master appointed especially by the court, for the sole purpose of making a sale in the absence of the receiver, and for no other purpose than to make the sale and report the same

to the court, should either give bond or take the oath. And, in the absence of some statutory provision regarding it, we think that the court has full jurisdiction and ample power to allow a special master or auctioneer to proceed with the sale, without his taking the oath or giving bond. As a reason for this, we would suggest that a purchaser at a judicial sale, such as was had in this case, would not pay the purchase price to the special agent appointed merely for the purpose of conducting the sale, but would pay it to the receiver and the purchaser in making such payment would be fully protected by the statutory bond which had been given by the receiver.

In the case of *Hess v. Grader,* 26 Grat. (Va.) 746, a decree was made appointing a commissioner to sell certain lands at public auction, provided that he should not act under the decree until he had given a bond for the performance of that and future decrees made in the case. Without executing such bond, the commissioner sold the property, and the sale was confirmed by the court. It was held in that case that such sale was binding upon the purchaser.

In *Seaman v. Northwestern Mutual Life Insurance Co.* 88 Fed. 493; C. C. A. 212-215, the court say:

"Neither the statute nor the decree under which the master sold this property, required him to give a bond, and one was not necessary to the legality of his action."

So we say in this case, neither the statutes of Oklahoma, nor the decree or any order of the court in the case, required the special master or auctioneer to give bond, and one was not therefore necessary to give validity to the proceedings, and its absence could not be urged by the purchaser as a reason for repudiating his purchase.

The second assignment of error is that said property was not advertised for sale in accordance with the provisions of the statute of Oklahoma, relating to judicial sales. The contention of the plaintiff in error is, that where property is sold at a receiver's sale, such sale should be conducted in the same manner as are sales under execution, and that the failure to follow the statute relative to execution sales, was of itself, such a gross irregularity as should vitiate the sale of the receiver in this case. We can find no requirement of the statute that a receiver's sale should be conducted in any such manner. The statutes are entirely silent as to the manner of the conduct of such sales, and we think that if the sale is conducted in the manner prescribed by the court in its decree, that the proceedings would be sufficient to give the purchaser a good title to the property. There is nothing in this record to show that the notice required by the court in its decree was not given, or that the sale was not conducted strictly in accordance with the orders of the court in such decree contained. It is true that section 4648 statutes of Oklahoma, 1903, relating to execution sales, provides as follows:

"Lands and tenements taken on execution shall not be sold until the officer cause public notice of the time and place of sale to be given, for at least thirty days before the day of sale, by advertisement in some newspaper printed in the county, or in case no newspaper be printed in the county, in some newspaper in general circulation therein, and by putting up an advertisement upon the court house door, and in five other public places in the county, two of which shall be in the township where such lands and tenements lie. All sales made without such advertisement shall be set aside, on motion, by the court to which the execution is returnable."

But, as we have before said in this opinion, we do not think that this provision of the statute necessarily applies to

receiver's sales, as the statute seems to confine it entirely to sales of lands and tenements taken on execution.   The record in this case shows that the receiver's sale was advertised in two newspapers published in Oklahoma county, daily from the 13th day of June, 1904, to the 15th day of July, 1904, which seems to be the only notice required by the court in the decree.   The objection of the plaintiff in error is based upon the failure of the record to show that the advertisements were placed upon the court house door, and in five other public places in Oklahoma county, as provided in the latter part of section 4648, but in the case of *McCurdy v. Baker,* 11 Kas., 111, the supreme court, speaking through Justice Brewer, held "That the posting of notices is   entirely   unnecessary,   except when no newspaper is published in the county."   But, as we have before said, this being a receiver's sale, and not a sale under execution, we think that a compliance with the decree as to notice was all that was required.

The only remaining assignment of error is that the said Charles F. Colcord was not eligible to be receiver of the Oklahoma Woolen Mills, because a stockholder and director of said corporation, and because a party to the action in which the receiver was appointed.   In answer to this, the first thing we desire to consider is: Has the plaintiff in error, Threadgill, estopped himself from attacking the validity of the receiver's sale, or the appointment of the receiver?   The plaintiff in error in this case, Threadgill, was the plaintiff in an action against the Oklahoma Woolen Mills, Margaret McKinley, C. F. Colcord, A. H. Classen, C. B. Ames, Frank Harrah, and G. B. Stone, this being the action in which the receiver was appointed, of whom the plaintiff in error purchased the property referred to in the   petition and answer in   this case.

Threadgill, as a stockholder in the Oklahoma Woolen Mills, and as plaintiff in that action, not only applied for, and consented to the appointment of a receiver, but had notice, actual or constructive, of everything that was done in that case, and so far as the record shows, he made no objection either to the appointment of Colcord as receiver, or to the appointment of Beall as special master or auctioneer. The record is silent as to any objection being made to Beall's giving no bond, or taking no oath, or that the property was not properly advertised, or that the receiver, C. F. Colcord, was a party in interest. No appeal was taken by him from the order of the court in the case appointing a receiver, neither was there an appeal taken from the order of the court overruling his motion to set aside the sale, or the order of the court recognizing and confirming the sale, and ordering him to pay over the amount of his bid.

Now it would seem to us that if Threadgill had any objection to make in regard to any of these matters, it was his duty to have urged them at the time the supposed errors were made in the suit in which it was adjudged. He was a party to the action, and as such party had opportunity to object to any and every stage of the proceedings had he so desired, and we think as a matter of law that where a person is a party to an action, that he is bound to take notice of all proceedings had and orders made in the case; and that by failing to make such objections until after the sale, he waived any right to make objection to the appointment of the receiver, or of the receiver's qualifications to act, or of the appointment of the special agent for the purpose of making that sale; and it is our belief that he cannot by any collateral proceedings subsequent to the sale, attack the validity of the receiver's appoint-

ment, or the sale made by him.    It was held by the court of appeals of the Indian Territory, in the case of *Tait v. Carey,* 49 S. W. 50 that where on attachment an assignee has been appointed receiver by consent of all parties, contrary to Mansfield's Digest, sec. 5290, prohibiting the appointment of an interested party, and he has executed the trust and sold the property, and the proceeds are subject to the order of the court, and no rights have been prejudiced, his appointment and his acts thereunder will not be disturbed.    In that case a direct attack was made on the receiver in the action in which he was appointed, and the court say:

"Counsel for appellants insist that the appointment of Primm as receiver, who was the assignee of the property, and the interpleader thereafter in the case, was illegal and void under section 5290 of Mansfield's Digest, which is as follows: 'No party or attorney interested in an action shall be appointed receiver therein'.    This section was not called to the attention of the trial court (Judge Kilgore presiding at the time) and no exception taken to the appointment of the assignee as receiver.    On the contrary all the parties consented to his appointment as receiver, including the appellants.    The appointment ought not to have been made.    But the assignee was appointed receiver, and he has wholly executed the trust confided to him.    The property has been sold and the proceeds are now subject to the order of the court.    No one's rights have been prejudiced.    What was done was by consent of all parties, and to the interest of all concerned.    The maxin, *'Fieri non debit sed factum valet'* applies.    While an error was committed, a reversal will not cure it, and will not promote the interests of any of the parties concerned."

Having made no timely objection in the case in which the receiver was appointed, to any of the actions of the court, and not having appealed from the judgment in that case,

the plaintiff in error Threadgill, will not now be permitted to collaterally attack any of the proceedings in that case. It may have been improper to have appointed Colcord receiver. It undoubtedly was, he being a party to the action, and a stockholder in the concern, but all the parties consented, and no exception having been taken to his appointment and no appeal having been taken by. the plaintiff in error, he cannot now be permitted to question such matters collaterally, when, having the opportunity at the time of the appointment, he failed to do so directly.

A direct attack was made upon the appointment of the receiver in the case of *Rumsey v. People's Railway Co.*, 154 Mo. 215. This was an action to foreclose under a trust deed, and judgment was rendered for the plaintiff. It was held in that case that the appointment of the receiver, being acquiesced in by all the parties for more than a year, during which time they participated in the suit in which he was appointed, that any irregularity in the appointment of the receiver had been waived by the parties.

Counsel for plaintiff in error cite as an authority for their contention that the plaintiff in error Threadgill has a right in this proceeding to attack the validity of the appointment of the receiver, and receiver's sale, the case of the *St. Louis, K. & S. R. R. Co.. et al., v. Wear*, 36 S. W. 357. This is cited as authority on the proposition that the receiver was improperly appointed, but an examination of that case will show that an attack in that case was a direct one by writ of prohibition, and not a collateral attack, such as is attempted by plaintiff in error in this case. In the Wear case, a receiver was appointed for a railroad company, he being at the time of such appointment, president of a competing line.

There was a state constitutional prohibition and a state statute declaring it unlawful for any railroad corporation to in any way exercise control over a parallel or competing line. An examination of that case will show that the court did not pass upon the question as to whether the appointment of the president of a competing line as receiver would be void because that question was not properly brought up by the record, and hence, as stated by the court, they were not called upon to say whether or not that fact would furnish of itself, a cause to prohibit the execution of the order of appointment. The case, it seems to us, is no authority for the proposition that the plaintiff in error can collaterally attack the appointment of the receiver in this case.

Another case relied on, or seemed to be relied on by counsel for plaintiff in error, is that of the *Moss National Bank v. The Lakeside Company, et al.,* 10 Ohio Cir. Court Dec. 542; and in that case it seems to us that the Ohio court clearly recognizes the authority that the appointment of an interested party in an action is not absolutely void but only voidable, and in that case the court says that the rule may be departed from by the consent of all the parties concerned. Hence, we say that we do not believe, that under the law, an attack can be made collaterally on the appointment of a receiver and sale under such appointment.

So far as we can ascertain, the courts uniformly hold that collateral attacks will not be permitted upon judicial proceedings, unless such proceedings are absolutely void. It is immaterial how irregular, or how erroneous the action of the court may be, if the court had jurisdiction of the subject-matter of the action, and of the parties, the only manner in which such errors and irregularities can be cured, is by

direct attack upon the proceedings, by some proper action taken in the case in which the errors are alleged to have been committed. This rule has been applied to irregularities concerning the appointment of receivers, the manner in which receiver's sales have been conducted, the manner in which receiver's sales have been advertised, and errors or irregularities of every conceivable nature.

A direction in a judgment of foreclosure, that the sale should be made by a referee instead of the sheriff, as provided by statute, which in violation of such statute, has been upheld.

In *Sproule v. Davis,* 63 N. E. 1106, 171 N. Y. 277, N. Y. Supp., 229, it was held that this was a mere irregularity not affecting the title of the purchaser at the sale, nor entitling him to be relieved from his purchase.

In *Gaskin v. Anderson,* 55 Barb. 259, it is held that a purchaser cannot resist the payment of the purchase money on the ground that the officer selling at a judicial sale was a referee, where the parties to the action did not complain.

The rule is stated very clearly in the case of *Metropolitan Nat. Bank, et al., v. Commerical National Bank,* 74 N. W. page 26 and 27, where the court say:

"The first complaint made by the appellant is that the court erred in sustaining a demurrer to the second division of its answer. The defense alleged in that division was, in substance as follows: That Bradford is not the receiver of the Buena Vista State Bank, and is not authorized to maintain this action for the reason that, as he was the clerk of the district court in and for Buena Vista county at the time the order purporting to appoint him receiver was made, he was disqualified to accept the appointment because he was the only person authorized by law to approve the bonds of receivers appointed by the court and keep possession thereof, and

the only person authorized to keep the record and entries of the appointment of such receivers, and to preserve the pleadings, papers, reports, bonds, records and other proceeding. connected therewith, and arising therefrom; that this appointment as receiver was void, and that he is wholly without right or power to maintain this action. It is urged by the appellee that, even if it be true that the duties of clerk and receiver are such that one person should not hold both offices yet that question cannot be considered on its merits in this action, for the reason that the second division of the answer is in the nature of a collateral attack upon proceedings had and an order made in another action, and that, we think, is true. The elegibility of Bradford was necessarily involved in the proceedings which were instituted to close the insolvent bank and distribute its assets through the medium of a receiver. The court had jurisdiction of the subject-matter of the proceedings, and of the parties, and its order appointing Bradford, receiver, involved the finding that he was eligible to the office. It may be that if proper objection had been made, the order would have been set aside or reversed on appeal; but, if the bank and its stockholders and other persons interested in the assets are satisfied with the appointment, other persons should not be heard to complain, especially by a collateral attack as attempted in this case. *Van Fleet's* Coll. Attack, sec. 3; *Whittlesey v. Frantz,* 74 N. Y. 459; *Attorney General v. Insurance Co.,* 77 N. Y. 274; *Banks v. Duckinfield,* 18 N. Y. 95; *Jones v. Blunn* (N. Y. App.) 39 N. E. 954; *Davis v. Shearer* (Wis.) 62 N. W. 1050, *Cadle v. Baker,* 20 Wall. 650. See also, *Pursley v. Hayes,* 22 Iowa, 11; *McCandles v. Hazen,* (Iowa) 67 N. W. 256.

"But it is said if it be conceded that the appointment of a clerk as receiver cannot be questioned in this action, yet the appellant may show that he never qualified as receiver, for the reason that he could not approve his own bond, and the court was not authorized to approve it. We think this objection is shown to be unsound by what has already been said,

and by the fact that the approval by the court of the bond given by the receiver was, in effect, an adjudication in that proceeding that the bond was sufficient. Moreover, Bradford may have been a receiver *de facto*, although he had not given any bond. *Manufacturing Co. v. Sterrett*, 94 Iowa, 158, 62 N. W. 675. We conclude that the demurrer to the second division of the answer was properly sustained."

In *Brande v. Bond*, 63 Wis. 140, 23 N. W. 101, the court says:

"The same objections are taken to the proceedings of the receiver. It is said he never qualified by giving the requisite bond, and did not make the sale pursuant to the order of the court. But it is very clear that these objections cannot now be considered in this collateral suit."

Now it seems to us that if the objection that a receiver had not qualified by giving a requisite bond, could not be raised in a collateral suit, much less could an objection that a mere auctioneer had not given bond, particularly where neither the decree nor the statute required a bond to be given or an oath to be taken.

In *Holcroft v. Douglass*, 155 Ind. 139, it is held that where a court has the power to appoint a receiver for the creditors, the exercise of the power, however erroneous, cannot be collaterally attacked.

An act of congress approved on the 3rd day of March, 1879, contained in the 20 Stat. at Large, 415, chap. 183, provides as follows:

"No clerk of the district or circuit court of the United States, or their deputies, shall be appointed a receiver or master in any case, except where the judge of said court shall determine that special reasons exist therefor, to be assigned in the order of appointment."

In construing this section in connection with the appointment of a receiver of a corporation, and upon appeal from the order of confirmation of sale made under a decree of foreclosure of a mortgage, Sanborn, circuit judge, in the case of *Seaman, v. N. W. Mutual Life Insurance Co.,* 86 Fed. 493, 30 C. C. A. 212, 216; lays down the following rule:

"The chief ground of objection to Dundy's authority is, however, that he was ineligible to the position of a standing master in chancery, or of a master to conduct the sale, under the acts of congress which we have quoted, because he was the clerk of the United States district court, and because he was the son of the United States district judge. But that question is not in this case. He was appointed as standing master in chancery, under equity rule 82, in 1886, by judges in whom was vested the power, and upon whom was imposed the duty of making the selection and appointment. He was appointed the master to make this sale in the decree by the court which had jurisdiction of the parties, and of the subject-matter, and full authority to appoint an officer for that purpose. No motion has ever been made to set aside or modify the order of 1886, by which Dundy was appointed a standing master, or the decree of 1895, by which he was empowered to make this sale. No appeal was ever taken from that decree, and the time for appeal has long since passed. The objection that Dundy was ineligible to this position was first made in a motion to set aside the appraisement on March the 18th, 1897, and was renewed in objections to the confirmation of the sale on April 21, 1897. It was presented in no other way and these were collateral, and not direct attacks upon the order of 1886, and the decree of 1895. The only question which they presented was whether the court which made that order and that decree had jurisdiction to hear and determine the questions whether or not Dundy was eligible to the position of standing master, and to the position of master to make this sale. The question is not debatable.

The United States circuit court was the court and the only court which had original jurisdiction to hear and decide those questions. Its decision might have been reviewed by an appeal from it. Perhaps it might have been modified or set aside by the court on a direct motion for that purpose, but while it stood unchallenged by a direct attack it was conclusive. The question which the appellant now seeks to raise,—the question whether this decision was erroneous,—is not open in a collateral attack. Jurisdiction to hear and determine a question is not limited to the power to make correct decisions, and judgments and decisions of courts having jurisdiction are equally conclusive whether right or wrong, unless challenged by writ of error or appeal, or impeached by fraud." Citing *Foltz v. Railway Co.*, 8 C. C. A. 635, 637; *Board v. Platt* 25 C. C. A. 87.

In the case at bar, the only manner in which the appointment of receiver could be attacked, or the sale or the manner in which it was made could be questioned, would be in the court in which the receiver was appointed, and the sale ordered made.

In the case of *Libby v. Rosecrans*, 55 Barb. 219, it was held that the validity of a judicial sale of the assets of an insolvent corporation, by a receiver, cannot be impeached in a collateral action.

In *Anderson v. Chicago Title & Trust Co.*, 77 N. W. 910; it was held where the jurisdiction of the court has attached in proceedings for the sale of property, the purchaser's title is unprejudiced as against all persons who are made parties, by an error in the proceedings.

In *Morrison v. Nellis*, 15 Pa. 41, 7 Atl. 768; it was held that a stockholder who has joined in an application for an order for a receiver to sell the assets of a corporation, is es-

topped from attacking the validity of the order directing the sale.

In *Battershall v. Davis,* 31 Barb. ·323, the court says:

"It is alleged by the defendants that the proceedings in the action of Christie against the company for a dissolution thereof, wherein the receiver was appointed, and was afterwards authorized to sell the assets *etc.,* of the company, were irregular and void, and that the title of the plaintiff to the bond and mortgage in question is therefore nugatory and worthless. Questions of irregularity are to be settled in the action wherein they were raised, unless questions of jurisdiction are involved."

In a Nebraska case (*Schaberg's Estate v. McDonald,* 83 N. W. 737, 739, 60 Neb. 493.) an action was ·brought by the receiver of a national bank against a stockholder of the bank for the collection of an assessment which had been ordered to be levied by the comptroller of ~the currency, and the stockholder attempted to attack the validity of the appointment of a receiver and the sale made by ·him, but the court held that a sale made by the receiver of a national bank under an order of a court of competent jurisdiction is a judicial sale, and the approval thereof by the court has the force and effect of a judgment, and such proceedings are not subject to collateral attack, and that if such sale be irregular and voidable only, then it is to be treated as a valid sale, until by proceedings in the proper tribunal whence the sale emanated the irregularity is corrected.

In the case of *Miller v. Brown,* 95 N. W. 797, the court say:

"It is objected that the appointment of plaintiff as a receiver is void, because no notice was given, but when a court of competent jurisdiction has appointed a receiver in an ac-

tion where such appointment is authorized, the authority of such receiver is not open to collateral attack."

And, in *Hatfield v. Cummings*, 50 N. E. 817-819, the court say:

"All objections to such appointment (of a receiver) after the affirmance of that judgment, in the nature of a collateral attack, come from whatsoever or from whatever quarter they might, are collateral impeachments of the judgment of a court of competent jurisdiction. And such attacks, we have seen, cannot be successfully made, even though the court, in making such appointment, erred and misconstrued the law. In case no appeal had been taken, the effect of the judgment appointing the receiver is the same."

In *Conklin v. Hall*, 2 Barb. Ch. 136, one who had been defendant in a foreclosure proceeding, became purchaser of the property at the sale, and paid a deposit of 10 per cent. of the purchase price upon the property being bid off to him. He subsequently refused to pay the balance of the purchase price, claiming that the appointment of the guardian *ad litem*, in the foreclosure action, had been irregularly made, and appealed from an order of the court directing that he pay the balance of such purchase price. It was there held that where a purchaser at a master's sale, under a decree, is himself a party to the suit in which the decree was entered, he cannot, in a collateral proceeding, raise a question as to the regularity of the decree; but if the decree is irregular, so that such purchaser will not get a good title to the premises purchased by him, his remedy is to apply to the court directly to set aside the decree on that ground. At page 136 of the decision, the court say:

"Again, the purchaser in this case was himself a party to the suit, and cannot raise the question as to the regularity

of the decree, in this collateral way; if the decree was irregular, so that the purchaser at a master's sale would not get a good title to the premises, the appellant might have applied to the court directly, either in behalf of himself, or of his infant children, to set aside the decree on that ground."

Now in the case at bar, no reason is given, or excuse offered so far as the record shows, why Threadgill did not, in the original suit, urge the objections to the validity of the appointment of the receiver, and to the validity of the sale, that he is attempting to raise in this collateral proceeding. Being a party to that suit, it was his duty, if any of the proceedings therein were objectionable, or irregular, to call the attention of the court by timely objections to such matters, and, in the event of an adverse ruling, to have appealed from the decision of the court. He made no objections until after the purchase of the property by him, and having failed to do so, he will not now be heard, in an action brought by the receiver to collect the amount of the bid, to collaterally raise this question.

Upon the question of the right of the plaintiff in error to attack the validity of this sale, or the appointment of the receiver by collateral proceedings, the supreme court of the United States has, in unmistakable terms, passed upon the question in a number of cases. In the case of *Simmons v. Saul,* 138 U. S. 439, they state the following to be the rule:

"* * * We are of the opinion that the jurisdiction of the subject matter having attached, any information as to notices, advertisements, *etc.,* in the subsequent proceedings of the court cannot oust that jurisdiction. They are, at most, errors which could be corrected on appeal, or avoided in a direct action of annulment, as expressly provided in the articles of the code above cited, but cannot be made the

grounds on which the decree of the court can be collaterally assailed. Our conclusion on this branch of the case is fully borne out by many decisions of this court, two of which are cited above. In *McNit v. Turner,* 16 Wall, 366, Mr. Justice Swayne, speaking for the court said: 'Jurisdiction is authority to hear and determine. It is an axiomatic proposition that, when jurisdiction has attached, whatever errors may subsequently occur in its exercise, the proceedings being *coram judice* can be impeached collaterally only for fraud. In all other respects it is as conclusive as if it were irreversible in a proceeding for error.' *Grignon's Lessee v. Astor,* 2 How. 319, 337, 340, 341, was, like this, a case of a sale by an administrator. The court, in its opinion, said: 'The whole merits of the controversy depend on one single question: Had the county court of Brown county jurisdiction of the subject on which they acted?' * * * Nor is it necessary that a full or perfect account should appear in the records of the contents of papers on file, or the judgment of the court on matters preliminary to a final order; it is enough that there be something of record which shows the subject matter before the court, and their action upon it, that their judicial power arose and was exercised by a definitive order, sentence or decree. * * * The granting of the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they exist or not is wholly immaterial, if no appeal is taken. The rule is the same whether the law gives an appeal or not. If none is given from the final decree, it is conclusive on all whom it concerns. * * * The court having power to make the decree it can be impeached only by fraud in the party who obtains it. *U. S. v. Arrendondo,* 6 Pet. 729. A purchaser under it is not bound to look beyond the decree. If there is error in it of the most palpable kind, if the court which rendered it, have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them power to hear and determine the case before them the title of a purchaser is as much protected as if the adjudication would stand the test of a writ of error.''

And in support of this opinion, they cite *Thompson v. Tolmie,* 2 Pet. 157; *Mohr v. Manierre,* 101 U. S. 417; *Comstock v. Crawford,* 3 Wall. 396; *Florentine v. Barton,* 2 Wall. 210; *Thaw v. Rilchie,* 136 U. S. 519.

If the district court of Oklahoma county, in the action in which the receiver was appointed, had jurisdiction to appoint a receiver of a corporation, and as to that proposition there can be no question, than every subsequent act which might have been performed by that court, must stand until it is directly attacked in that proceeding, and the plaintiff in error in this case has no right to collaterally attack the proceedings in the receivership case, even though the court in that case might have in numerous instances disregarded, misconstrued, or disobeyed the plain provision of the law.

The plaintiff in error seems fearful lest he be compelled to take a doubtful or unmarketable title, and seems to imagine that any irregularity, either in the appointment of the receiver, or as to the manner in which the sale was conducted, would affect his title, but as we take it, this is not the law.

A purchaser, under a deed from a receiver, is not bound to examine all the proceedings in the case in which the receiver is appointed. It is sufficient for him to see that there is a suit in equity, or was one, in which the court appointed a receiver of property, that such receiver was authorized by the court to sell the property, that a sale was made under such authority, that the sale was confirmed by the court, and that the deed given by the receiver accurately recites the property interests thus sold. A purchaser at a judicial sale is not bound to inquire whether any errors intervened in the action of the court, or irregularities were committed by the receiver in the sale. *Koontz v. Northern Bank,* 83 U. S. (16 Wall.)

196, 21 L. Ed. 465; *Grignon's Lessee v. Astor,* 43 U. S. (2 How.) 319, L. Ed. 283; *Voorhees v. Bank of U. S.* 10 Pet. 449, L. Ed. 490.

Even though the case in which the receiver was appointed might be subsequently reversed on appeal, such reversal would not affect the sale if the court had jurisdiction to render the decree, and the fact that the plaintiff in the suit in which the receiver was appointed was himself the purchaser at the receiver's sale, would not alter the case.

In the case of *Gossum v. Donaldson,* 18 B. Monroe, (Ky) 230, 68 Am. Dec. 723-725, 726, the court in passing upon the rights of purchaser at a judicial sale, after a reversal of the case, say:

"The ground upon which it is contended that the purchaser at the decretal sale acquired no title, is that the decree under which the sale was made was subsequently reversed by this court; and no other decree was rendered in the case, directing a sale of the land, but the only decree that was rendered merely confirmed the sale made under the previous decree, which act of the court, as argued, was entirely nugatory and of no avail whatever. The reversal of the decree under which the sale was made did not, however have the effect attributed to it. It did not vitiate the sale nor divest the purchaser of the title which he had acquired. The fact that the complainant himself was the purchaser, made no difference. It is the policy of the law to sustain judicial sales, and there is the same reason for protecting parties who are purchasers that there is for protecting strangers. *Bennington v. Reed,* 8 B. Mon. 105. The general rule is, that a purchase at a decretal sale, made by a court of competent jurisdiction, is valid, unless the decree be void, although it may be reversed. *Buslard v. Gates,* 4 Dana, 438; *Lampton v. Ushers Heirs,* 7 B. Mon. 57; *Harrison v. Hord,* 12 Id. 472.'

"It is well settled that a judicial sale of property of a judgment defendant, when purchased by a stranger, vests in him absolutely the title of the judgment debtor, and this title is not divested by a subsequent reversal of the judgment. It is contended by appellant that the rule is different where the purchase is made by the judgment plaintiff, and that in such cases a reversal of the erroneous judgment will set aside the sale or render it void *ipso facto*. We are referred to the cases of *Baker v. Baker*, 87 Ky. 461, 9 S. W. 382; and *Spicer v. Seal*, (Ky.) 30 S. W. 47, as sustaining this position. We are referred to other cases supporting the same doctrine, but examination shows that they were cases of void judgments, and sales rather than erroneous." *Blake v. Wolfe*, 64 S. W. 910, 23 Ky. L. Rep. 1134.

There would be much force in the arguments of counsel for plaintiff in error in the concluding part of their brief wherein they say "The court could not render judgment on the pleadings for defendant in error and against plaintiff in error, for the sum of $270.60, for employing a watchman to take care of this property, when it was denied under the general denial, and there was no evidence before the court to show that such a watchman had been employed, nor what his compensation was. Neither was there any order of court allowing the receiver to employ such watchman," but unfortunately for plaintiff in error, no such judgment was rendered by the court. The journal entry in the record page 33, adjudges that the receiver of the Oklahoma Woolen Mills have and recover of the defendant, John Threadgill, the sum of $12,227.60, being the amount of defendant's bid on said property, together with seven per cent. interest thereon since the 16th day of July, 1904, the date of said bid. So by referring to the journal entry it will be seen that no such judgment for

the fees or salary of a watchman as complained of by plaintiff in erorr, was rendered by the court.

We have carefully examined the record, and finding no error therein, the judgment of the district court is hereby affirmed, at the costs of plaintiff in error.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.