### ABRAHAM et al. v. WASAFF.

No. 15814—Opinion Filed June 2, 1925.

Rehearing Denied Sept. 8, 1925.

1. **Appeal and Error—Change of Theory of Case.**

A party will not be permitted to urge a different theory on appeal from that on which he submitted the cause in the trial court.

2. **Brokers—Right to Commission—Sale by Owner to Prospect Procured by Broker.**

In an action by a real estate broker to recover the amount of his commission. it is immaterial that the owner sold the property himself. If, after the property is listed with the broker for sale, he introduces the purchaser to the owner and through such introduction negotiations are begun by the owner and the sale of the property is made to such purchaser by the owner, the broker is entitled to his commission.

3. **Same — Broker as Procuring Cause of Sale.**

A broker will be regarded as the procuring and efficient cause if his efforts are the foundation upon which the negotiations resulting in the sale are begun.

4. **Same — Question of Readiness and Ability of Purchaser Eliminated.**

Where a deal is closed and a sale is made by the owner himself to the purchaser produced by the broker, the question of the ability, readiness, and willingness of the purchaser to buy on the terms submitted by the owner to the broker is eliminated.

5. **Same—Duties of Broker—Disclosure to Owner of Name of Prospective Buyer.**

The relation of principal and agent does not require a real estate broker, prior to or at the time the property is listed with him for sale, to disclose to the owner the name of the prospective purchaser whom the broker might have knowledge of.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Tulsa County; G. M. Barrett, Assigned Judge.

Action by K. Wasaff against Joe Abraham and Louis Abraham. Judgment for plaintiff, and defendants bring error. Affirmed.

Cheatham & Beaver, Lydick, McPherrin & Wilson, and Kittie C. Sturdevant, for plaintiffs in error.

Leahy & Brewster and T. L. Blakemore, for defendants in error.

Opinion by JARMAN, C. K. Wasaff sued Joe Abraham, Louis Abraham, and the Peters Petroleum Company for broker's commission, alleged to be due for the sale of certain oil properties belonging to the defendants, the Abrahams. During the trial, the action was dismissed as to the Peters Petroleum Company; verdict was for the plaintiff against the defendants, the Abrahams, on which judgment was rendered, and said defendants have appealed.

The defendants state their first proposition as follows:

"According to the plaintiff's own testimony, no sale was consummated by him during the time limited by the terms of his broker's contract."

The defendants contend that, according to

the evidence of the plaintiff, he had only 30 days from December 8, 1922, in which to sell the property in question, and, having failed to make the sale within that time, he is not entitled to recover. This defense was not alleged in the answer of the defendants, it was not mentioned in the opening statement of counsel to the jury, it was not referred to by the court in his instructions to the jury, and no request was made for an instruction embodying such theory; it is well settled that a party cannot be heard to urge a different theory on appeal from that relied upon in the trial court.

As a second proposition, the defendants contend that the evidence of the plaintiff shows he was not the procuring and efficient cause of the sale, and that he did not produce a purchaser ready, willing and able to buy.

The evidence on the part of the plaintiff shows the following state of facts: The plaintiff resided in Muskogee and the defendants in Bristow; the defendants owned certain oil and gas properties, including leases, production, pipe lines, a gas franchise in the city of Bristow, and the fee simple title to certain lands, all of which was valued originally at $2,000,000; on November 2, 1922, the plaintiff, having learned that the defendants were offering said properties for sale, went to Bristow to see the defendants concerning the same and procured a listing thereof for sale on a basis of $1,500,000 net to the defendants, the plaintiff to receive all he could get for said property over and above that amount; the plaintiff was not restricted in any manner to any territory or to any person or class of persons in the sale of said properties; upon procuring a list of said properties, the plaintiff immediately went to Tulsa, where he met George David, who advised that the Peters Petroleum Company, which recently had been organized, hereafter referred to as company, was in the market for oil and gas leases and production, and the plaintiff then discussed the matter of the sale of said properties with a Mr. McKinley, who was the secretary and treasurer of certain companies which which C. B. Peters, president of the company, was connected; on November 5th, McKinley called the plaintiff over the phone at his home in Muskogee and advised that the company was interested in the Abraham properties and directed him to go to Bristow and take the defendants to Tulsa so the proposition could be discussed in a business-like manner with the company; the plaintiff went immediately to Bristow and advised the defendants, on the night of No-

vember 5th, that the company was interested in purchasing said properties, and insisted on the defendants accompanying him to Tulsa to discuss the sale of said properties with said company; that was the first time the defendants knew that the company was a prospective purchaser; on the following day, November 6th, the defendant, Louis Abraham, with full authority to represent his codefendant, Joe Abraham, accompanied the plaintiff to Tulsa, where said defendant was introduced by the plaintiff to Mr. Peters, president of the company; that was the first time either of the defendants had met Mr. Peters or any other person connected with the company, and it was the first time Mr. Peters or any one representing the company had met either of the defendants; Mr. Peters indicated that his company likely would be interested in this proposition but, on account of the Prairie Oil & Gas Company having under consideration a proposition to purchase the same, he declined to negotiate further until the Prairie had gotten through with the proposition; in a few days, the Prairie definitely decided not to purchase said properties, and the plaintiff was advised that the company was interested in, and would purchase, the oil and gas leases and the production, but not the other property; the plaintiff enlisted the services of George David and a Mr. Overlees, brokers, to assist him in the sale of these properties, and the plaintiff, personally, and through his assistants, David and Overlees, kept in almost constant touch with the defendants and the prospective purchaser, the company: after the visit of the plaintiff and the defendant, Louis Abraham, to the office of the company, Mr. Peters detailed a Mr. Higgins, superintendent of certain companies in which Mr. Peters was interested, and Mr. McKinley to inspect the Abraham properties and to carry on the negotiations for the purchase thereof; the plaintiff and his assistants made a number of trips to Bristow to see the defendants in connection with this sale and had many interviews with Mr. McKinley, representative of the company, in connection therewith; the plaintiff and his assistants were endeavoring to induce the defendants to eliminate the gas franchise, royalties, and the lands, and put up only the leases and the production which the company was interested in purchasing; during the meantime, the gas franchise was sold by the defendants and the production had decreased from 2,500 barrels to about 1,400 barrels per day, and said properties were not nearly so valuable as they were at first, which condition obtained for sometime. and,

on December 28th, the plaintiff again went to Bristow and advised the defendants to put up the leases and production to the company, and the plaintiff agreed to handle the same on a commission basis; after discussing the proposition at length, it was agreed that the plaintiff should attempt to sell all of said properties, including the lands, leases, production, and royalties, to certain New York parties, with whom the plaintiff had been negotiating. and that he should ask $1,500,000 for the same, and the plaintiff was given 30 days' time within which to close the deal with the New York parties, and it was further agreed that, in the event the property was not sold to the New York parties, the plaintiff could proceed with the sale of the leases and the production to the company; in a few days after this agreement was had, the defendants sent their attorney, a Mr. Thraves, to Tulsa to negotiate with the company for the sale of said properties. and, soon thereafter, the defendant, Joe Abraham, personally, went to Tulsa and took up the proposition with the company, culminating in the defendants submitting a written proposition for the sale of the leases and the production to the company, which was subsequently accepted, and thereafter a written contract was entered into between the defendants and the company for the sale of said property, which contract was finally modified by the parties and said properties were sold by the defendants to the company for a consideration of $900,000.

Under the foregoing statement of facts, as testified to by the plaintiff. the jury was warranted in determining that the plaintiff was the procuring cause of said sale. It was never the contention of the plaintiff that he personally sold the property to the company, but, under the rule announced in the case of Roberts v. Markham, 26 Okla. 387, 109 Pac. 127, which has been consistently followed by this court in numerous decisions, he is entitled to his commission on said sale for the reason that, after the property was listed with him for sale, he introduced the purchaser, the company. to the defendants, and through such introduction, negotiations for the sale of said property were begun and the sale was effected by the defendants.

Under the second proposition, it is further contended that the evidence, on the part of the plaintiff, fails to disclose that the plaintiff, at any time, produced a purchaser who was ready, willing and able to purchase on the terms submitted by defendants; but this contention is untenable for the reason that, after the defendants, themselves, closed the deal with the company they could no longer raise the question of the ability, readiness, and willingness of the purchaser to buy. Schlegel v. Fuller, 48 Okla. 134, 149 Pac. 1118.

The third proposition submitted by counsel for defendants is that the plaintiff concealed from the defendant material facts known to the plaintiff, and. on account of collusion between the plaintiff and agents of the purchaser, the plaintiff forfeited his right to compensation. There is no evidence to show any fraud practiced by the plaintiff in the sale of said properties. It is intimated by counsel for defendants that the plaintiff knew the company was interested in the purchasing of said properties at the time he procured a listing thereof, and that it was the duty of the plaintiff to have revealed such knowledge to the defendants. There is nothing in the record to show that the prospective purchaser. the company, ever discussed with the plaintiff the terms upon which it would be interested in purchasing said properties, prior to the time the same were listed with the plaintiff, and, besides, we know of no rule and can see no reason why a broker should be called upon, before entering into a contract to handle properties of an owner for sale, to apprise such owner of the name of any prospective purchaser. he might know of.

In the reply brief of the defendants, it is insisted that certain instructions are erroneous and for that reason the judgment of the trial court should be reversed. Instruction numbered 2, given by the court, is especially complained of. and it is contended by counsel that the court, by giving said instruction, deprived the jury of the right to determine who was the procuring and efficient cause of the sale, and that said instruction practically amounted to directing a verdict for the plaintiff; said instruction being as follows:

"A person employed to sell property for another is termed a 'broker,' and you are instructed that a broker employed to sell property is entitled to his commissions if during the continuance of his agency he is the efficient, procuring cause of the sale, even though the actual agreement of sale is made by the purchaser with the owner of the property, and the broker would be regarded as the procuring, efficient cause, if his efforts are the foundation upon which the negotiations, resulting in the sale, are begun."

This instruction is almost identical with syllabus two in the case of Treece v. Shoemaker, 80 Okla. 235, 195 Pac. 766:

"A broker employed to secure a lease is

entitled to his commissions if during the continuance of his agency he is the efficient or procuring cause of the execution of the lease, though the actual agreement for the lease is made by the principal with the owner of the land, and the broker will be regarded the procuring efficient cause if his efforts are the foundation upon which the negotiations resulting in the execution of the lease are begun."

The court correctly instructed the jury that the plaintiff would be regarded as the procuring and efficient cause if his efforts were the foundation upon which the negotiations resulting in the sale were begun, and, before the jury could say that the plaintiff was the procuring cause, it was necessary for them to find from the evidence that the efforts of the plaintiff formed the foundation upon which the negotiations, finally resulting in the sale, were begun, as held in the Treece v. Shoemaker Case, supra.

We find no prejudicial error in the record, and the judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 3 C. J. p. 718. (2) 9 C. J. p. 620. (3) 9 C. J. p. 613. (4) 9 C. J. p. 596. (5) 9 C. J. p. 536. See under (1) 2 R. C. L. pp. 79-82; 1 R. C. L. Supp. p. 387; 4 R. C. L. Supp. 79; 5 R. C. L. Supp. p. 68. (2, 3) anno. 44 L. R. A. 344; 3 L. R. A. (N. S.) 577; 4 R. C. L. pp. 307, 308; 1 R. C. L. Supp. 1113; 4 R. C. L. Supp. 262. (4) 1 A. L. R. p. 528.