**LINSON v. BARNES.**

No. 19047.   Opinion Filed April 30, 1929.

238

Anderson & Hickman, for plaintiff in error.

Sullivan & Rice, for defendant in error.

REID, C. The record in this case is meager, but it seems therefrom that the question presented by the appeal arose in this way: There was an action pending in the district court of Stephens county, styled Hanbury, Russell Supply Co. v. L. H. Harvey and Steve Linson, and this action was consolidated with the case of W. E. Farrell v. L. H. Harvey, in which cause several other parties were interpleaded. It may be fairly inferred that said proceedings were for the purposes of establishing and foreclosing materialmens liens and laborers' liens on a certain oil and gas leasehold which was developed and operated by Harvey and Linson.

On December 18, 1926, we find the following part of an order which appears to have been entered in the consolidated cases, to wit:

"Journal Entry.

"* * * And it appearing to the court further that the application of the defendant. Steve Linson, for the appointment of a receiver should be sustained, and that Jessie F. Barnes, court clerk. should be appointed a special receiver herein for the only and sole purpose of receiving and collecting the proceeds of the sale of gas runs from said premises herein involved during the pendency of this litigation,

"And further appearing to the court that the garnishment of Hanbury Russell Supply Company, plaintiff herein, should be in all things sustained, and that the same is superior and paramount to any and all claims of any of the other parties hereto; that the Lone Star Gas Company, garnishee, should pay the same to the court clerk as such clerk and as receiver, and when paid in the same to be paid to the said Hanbury Russell

Supply Company to apply on its judgment herein rendered. * * *

"It is therefore ordered, adjudged, and decreed by the court that the application for the appointment of receiver be, and the same is hereby sustained, and Jessie F. Barnes, court clerk, is hereby appointed special receiver to collect and receive the proceeds from gas runs and sale thereof from said premises that may have heretofore accrued and that will hereafter accrue.

"It is further ordered, adjudged and decreed by the court that the garnishment of the Hanbury Russell Supply Company be, and the same is hereby in all things, sustained, and that the said Lone Star Gas Company, garnishee, be, and it is hereby ordered and directed to pay to Jessie F. Barnes, receiver, and as court clerk, the sum of $2,046.32. Said court clerk upon receipt of the same is directed to pay said amount unto Hanbury Russell Supply Company, to be applied upon the judgment rendered herein in favor of the said Hanbury Russell Supply Company and against L. H. Harvey and Steve Linson. * * *"

On the 26th day of May, 1927, Jessie F. Barnes, as receiver, filed her itemized report as receiver showing the total collection of $5,299.88, and the itemized disbursements of said sum. except a balance of $355.23; asked that said report be approved; that she be allowed a fee as receiver, and be discharged. On the 27th day of May, 1927, that court entered an order confirming the report. allowing her a fee of $250 for her services, and discharged her.

On the same day said order was entered, the defendant, Steve Linson. filed an application to vacate the order approving the report and allowing the fee to the receiver on the ground that the matter had been heard without notice to him, and attacked the allowance of the receiver's fee on the ground that the services performed by her were within her duty as court clerk, and that the funds received by her had been deposited with the county treasurer and disbursed by regular warrants drawn against the court clerk's account, for which reasons she was not entitled to any fee for such service.

It is shown in the journal entry thereon that, when the hearing was had before the court on the motion to vacate the order approving the receiver's report and allowing the fee. the court announced that plaintiff in error had not been present upon the presentation of the receiver's final account. and thereupon allowed the movant to introduce his evidence in opposition thereto.

and at the conclusion of the hearing the court announced that its opinion was unchanged and that the motion should be overruled, and entered judgment in accordance with this conclusion.

There are, in substance, two assignments of error presented by this appeal. The first one is that the court erred in allowing compensation to the defendant in error, as receiver, for the reason that all acts and things done and performed by her, for which she was allowed the fee, were within her duties as court clerk, and the court had no power to allow her compensation for these services.

It seems that $2,000 of the funds which came into the hands of defendant in error, and included in her report as receiver, was paid to her by the sheriff from the sale of the oil and gas leasehold under an order of sale issued to the sheriff on the judgment in this case; and that therefore this amount should be eliminated from consideration as a basis for compensation as receiver, for the reason that the law required her to receive and disburse this as clerk of the court.

It will be observed that, in the order of December 18, 1926, the garnishment proceedings by the plaintiff, Hanbury Russell Supply Company, against the defendant. Lone Star Gas Company, are sustained, and the garnishee is ordered to pay the amount of $2.046.32 so due to Jessie F. Barnes, as receiver and as court clerk, and said court clerk. upon the receipt of the same, is directed to pay said amount unto Hanbury Russell Supply Company, to be applied upon the judgment rendered herein in favor of the said Hanbury Russell Supply and against L. H. Harvey and Steve Linson. This item is shown in the report of the receiver to have been collected by her as receiver, and as receiver paid to Hanbury Russell Supply Company in accordance with the order of the court. This presented the question as to whether this money came to the clerk and was disbursed by her in her official capacity as court clerk. or as receiver.

The applicable statutes of this state relating to duties of the court clerk are as follows:

Section 878, C. O. S. 1921:

"The clerk of each of the courts shall exercise the powers and perform the duties conferred and imposed upon him by the statutes of this state and by the common law. In the performance of his duties, he shall be under the direction of his court."

Section 870, C. O. S. 1921:

"Where there is no execution outstanding, the clerk of the court in which the judgment was rendered may receive the amount of the judgment and costs, and receipt therefor, with the same effect as if the same had been paid to the sheriff on execution. * * *"

It appears from the order of December 18, 1926, that the plaintiff, Hanbury Russell Supply Company, had theretofore had judgment against Harvey and Linson, and that the garnishee, Lone Star Gas & Oil Company, had answered, showing an indebtedness by it to said parties in the sum of $2,046.32. Therefore, the order of the court sustaining the garnishment was, in effect, the rendition of a judgment in favor of the plaintiff against the garnishee for said amount, and the court, if it attempted to do so, had no authority to relieve said court clerk of her duty to receive and disburse said amount as court clerk, for the reason that under section 870, supra, this became her duty as such officer. We think this holding has been established in principle by this court in the case of Goodrich v. Williamson, 10 Okla. 617-623, 63 Pac. 974.

But if it be contended that this was not a judgment within the meaning of section 870, then we call attention to section 367, C. O. S. 1921, which reads as follows:

"From the time of the service of the summons upon the garnishee, he shall stand liable to the plaintiff to the amount of the property, moneys, credits, and effects in his possession, or under his control, belonging to the defendant, or in which he shall be interested, to the extent of his right or interest therein, and of all debts due or to become due to the defendant, except such as may be by law exempt from execution."

And the following part of section 386, C. O. S. 1921:

"A garnishee may pay the money owing to the defendant by him to the sheriff having the order of attachment, or into court. He shall be discharged from liability to the defendant for any money so paid, not exceeding the plaintiff's claim."

It appears from these sections that, from the time of the service of process upon a garnishee, he stands liable to plaintiff for any amount of money he may then be owing the defendant; and under section 386, he can relieve himself of further liability by paying the money to the sheriff having the order of attachment, **"or into court."** And if the garnishee does not pay the money to the sheriff, the question then becomes, To whom shall he pay the money in order to comply with that part of the statute authorizing him to pay it "into court"? Rood on Garnishment, section 317, answers this question, saying:

"Payment into court is payment to the clerk of the court," citing the case of Warren v. Matthew, 96 Ala. 183, 11 So. 285.

In that case the court had under consideration the meaning of the expression "paid into court," as found in the following statute of that state:

"Money in the hands of an attorney at law, sheriff or other officer, may be attached; and, in the case of officers of the court, the money must be paid into court, to abide the result of the suit, unless the court otherwise direct."

And it was then held that when money belonging to a defendant debtor was attached in the possession of the sheriff, the sheriff complied with said statute when he paid the money to the clerk of the court where such attachment proceedings were pending, as he thereby "paid the money into court."

In American Surety Company of New York v. Spain, 133 Okla. 7, 270 Pac. 844, this court seems to have answered the two related questions which we have just here discussed. The opinion in that case discloses that a guardian filed his final account as such in the county court, which account was disapproved and rejected by that court, and the guardian appealed to the district court, wherein the Southwestern Surety Insurance Company, as surety on the bond of the guardian, was there made a party to the proceedings. Upon the trial of the matter in the district court, it was found that the guardian was short in his accounts, and judgment was rendered against the guardian and his surety for the amount found to be due, and the judgment provided:

"That upon the payment of said sum of $2,750 to the county court of Jefferson county, Okla., for the use and benefit of said minor, the said W. F. Spain, as such guardian, and the Southwestern Surety Insurance Company, surety on said sale bond, be discharged from any and all liability thereunder by virtue of said sale bond."

The surety paid the amount due to the **county judge,** who failed to account to the minor for the fund, and the minor brought an action against the judge and the surety on his official bond to recover the amount so received by the county judge. This court held that the phrase used in the decree, "payment into the county court," referred

to the clerk of the county court, the only official authorized by law to receive the same, and that the court in making such order evidently had in mind section 870, supra; but that if the court did intend that payment be made to the county judge, the same would not be effective, as he had no right to receive said funds as judge; and the surety on his official bond was held not liable. The following cases sustain the meaning of the expression "payment into court" as herein defined: Louis Werner Stave Co. v. Warden, Orth & Hastings Co., 280 Fed. (C. C. A.) 601-604; Converse v. Washburn, 43 Vt. 127; Harris v. Broadway Savings Inst., 137 N. Y. S. 234.

It follows that whether the $2,046.32 came to the defendant in error in payment of a judgment, or was paid to her by the garnishee in response to the garnishment, it was her duty to receive and disburse the same as court clerk, and the court had no authority to allow her any compensation for this service.

In addition to the two foregoing items received and disbursed by the defendant in error, and so shown in her report as receiver, there came into her hands and was disbursed by her the further aggregate sum of $1,253.56, from the current runs of gas from the leasehold during the time of her receivership, and upon this arises the question as to whether the particular service thus rendered came within her official duties as court clerk, or was it an independent service as receiver, aside and disassociated from the duty of the public office which she then held.

High on Receivers (2nd Ed.) section 71, has this to say:

"While there are some reported cases in which the courts have appointed their own clerks as receivers, yet a clerk of a court is not by virtue of his office a receiver of the court, his functions being entirely distinct from those of receiver"

—and cites as supporting the text the following cases; Hammer v. Kaufman. 39 Ill. 87; Watters v. Carroll, 9 Yerg. (Tenn.) 102: Kerr v. Brandon, 84 N. C. 128; Rogers v. Odom, 86 N. C. 432.

In the case of Rogers v. Odom, supra, certain minor children. claiming to be entitled to the proceeds of an insurance policy upon the life of their deceased father, by their mother as next friend, asked the superior court to appoint a receiver for the purpose of collecting and receiving said fund and to manage the same for their use and

benefit; and in response to this request the court adjudged:

"That said N. R. Odom, clerk of the superior court of said county, be appointed receiver of said fund, with power and authority to sue for, collect, receive, and manage the same for the proper use and benefit of said minors."

In pursuance of this appointment, the said Odom, being the clerk as aforesaid, and as receiver, collected the money from the insurance company, and having converted it to his own use and failed to pay same to the minors, they brought an action in which they sought to recover against Odom, and his sureties, as clerk. The court, in determining whether the sureties were liable, decided the question as to whether the fund came into the hands of Odom in his official capacity, or as receiver, and concluded that it came to him as receiver and not as clerk, the applicable part of said opinion being as follows:

"The order of the superior court admits of but one construction. After appointing N. R. Odom, clerk of the superior court, receiver of the fund, it confers upon him 'the power and authority to sue for, receive, collect, and manage the same for the benefit of the minors.'

"The fund therefore came to his hands as receiver, and was never held by him in any other capacity. So that the principal, and, in fact, the only question necessary to be considered is, whether a liability attaches to his sureties as clerk, for the misappropriation of the fund so received and held; and as to this, we concur in the opinion entertained by his honor who presided in the court below.

"As he seems to have done, so do we look upon the appointment of receiver as altogether distinct from the office of clerk, and as imposing duties in no wise appertaining to that office, and which do not fall within the covenants of the bond given as clerk. And we know of no principle which can justify a court in extending the undertaking of a surety beyond the terms and spirit of the contract into which he has entered."

And the court further proceeded to elaborate on the reasons for the holding that it was no part of the duty of the clerk of the court to act as receiver, and exonerated the surety on his bond as clerk.

In this state we have had several cases involving suits upon the official bonds of clerks of courts, and the propositions discussed in these cases and principles therein decided throw light upon the question we have here. Some of the cases are: South-

Western Surety Ins. Co. v. Neal, 81 Okla. 194, 197 Pac. 439; Hughes v. Board of Com'rs of Oklahoma County, 50 Okla. 410, 150 Pac. 1029; Board of Com'rs of Creek County v. Vaughn et al., 51 Okla. 609, 152 Pac. 115, and American Surety Co. of New York et al. v. Spain, 133 Okla. 7, 270 Pac. 844.

The plaintiff in error in his brief relies strongly on the case of Findley v. Territory ex rel. Keyes, 12 Okla. 621, 73 Pac. 273, as supporting his contention that the defendant in error is not entitled to any compensation for her services as receiver. That case is not analogous to the one we are here considering, for the reason that Findley, being the probate judge of Kiowa county, was entitled to certain fees for his services, and the Act of Congress, under which he performed services and claimed the right to retain the fee therefor, designated that the services were to be performed by the probate judge, the office which Findley held; while in this case there is no law which confers upon the court clerk the duty of acting as receiver, and the fact that in the order appointing her she is designated by name and by the title of her office, is of no special significance, but is merely descriptive of the person.

In the North Carolina case we have mentioned, the court, in the order of appointment, also designated the appointee in the same way, but this fact appears not to have even been considered by the court in the opinion.

Throop on Public Officers, in discussing questions and cases analogous to those presented here, in section 487, has this to say:

"So, it has been held that an agreement by private persons to compensate a deputy sheriff, for procuring evidence, which would lead to the conviction of persons implicated in the commission of a crime, where the offense was committed and the trial had in a county other than that of which the deputy sheriff was an officer, was valid, and that an action could be maintained thereupon. The court said: 'The plaintiff had no legal duty to perform, by virtue of his office as deputy sheriff, in procuring the evidence, and causing it to be produced; having no writ to execute, and the offense having been committed and the trial had out of his county, we do not think the policy of the law forbade his receiving the compensation. It was not compensation for the performance of any duty enjoined upon him by law.' So a city officer, charged with the apprehension of offenders within, but not without, the city, was allowed to recover upon an agreement with an individual, to compensate him for leaving the city, to detect and apprehend a person who had committed an offense."

And in section 492 we find this:

"The comptroller of a city, who is appointed the agent of the city to receive bonds of the county, and apply them as directed by statute, is entitled to the same compensation as any other agent; that is, to a quantum meruit. The rule, that an officer can have no extra compensation, applies only to official services; and if a town agent is an attorney and acts as such by the direction of the town authorities, the town is liable for his services."

In 22 R. C. L. page 540, we find the rule to be stated that a public officer **cannot recover compensation in addition to his salary for the performance of acts within the scope of his official duty,** and that a promise to pay compensation for such services is contrary to public policy and cannot be enforced; however, the principle applicable to the item we are now considering is stated as follows:

"But an officer may earn a reward if he is under no obligation because of his official character to do the particular act for which the reward is promised. The general principle prohibiting public officers from receiving rewards for the performance of their official duties does not prevent them from entering into agreements with private individuals to render unofficial services in consideration of direct compensation being paid for such services."

But it may be suggested that the allowance and payment to a public officer of compensation for services performed without the duties of his office is against sound public policy and in contravention of that part of article 2, sec. 11, of the Constitution of this state, which reads as follows:

"Every person elected or appointed to any office of employment of trust or profit under the laws of the state, or under any ordinance of any municipality thereof, shall give personal attention to the duties of the office to which he is elected or appointed."

It appears that this court has answered the above question adversely to the foregoing suggestion in the case of Poos v. Kelly, 79 Okla. 118, 191 Pac. 600. In that case the defendant sought to recover on his cross-petition against the plaintiff for services rendered by defendant in making a trip to the state of Washington for the plaintiff in a legal matter. The plaintiff answered denying liability on the ground that if these services were performed by the defendant, as

alleged, it was while the defendant was holding the office of court clerk of Pawnee county, and that, under the above section of the Constitution, the defendant was required to give his personal attention to his office, and that if such contract was entered into, which he denied, the same was against public policy and void. This court sustained a judgment of recovery by the defendant for the services, and in the syllabus of the opinion said:

"A contract entered into by a public official is not against public policy merely for the reason that in the performance of the same he may temporarily fail to give his personal attention to the duties of his office.

"Section 11 of article 2 of the Constitution provides that a public officer shall give his personal attention to the duties of his office. The punishment for a failure so to do is removal from office or impeachment."

When it is observed that article 2, section 11, supra, includes within its terms every officer in this state, elective or appointive, from the highest to the lowest, it would seem wholly unreasonable for us to hold that each of such officers is prohibited from performing any service aside from the duties of his office, for which he may receive compensation. The fact that such officer is appointed by the court to perform outside duties would not deprive him of his right to compensation any more than if he were employed in a matter by a private individual. As suggested in Poos v. Kelly, supra, the people have their protection by removal or impeachment of any officer who neglects to perform the duties of his office; and this would be the case whether the neglect arose from the officer engaging in his own private business, his employment by individuals, or from performing services, not official, at the request of a court.

Let us apply to this case the test upon which this question has usually been decided by the court. Suppose the defendant in error had failed to account for all the money which came to her as we have stated, and a suit had been brought to recover on her bond as court clerk. This, by analogy, would squarely present the question here considered, and we think it would doubtless be held that the bond covered the liability as to the first two items, and that it did not cover the last one; and the fact that she did or did not carry the funds in her account as court clerk with the county treasurer would not affect the question.

It is next contended that the defendant in error failed to have approved a bond and take an oath as receiver in accordance with section 520, C. O. S. 1921, and for this she is not entitled to any compensation as a receiver.

We cannot sustain the foregoing contention for these reasons:

(1) The whole question as here presented arose on the motion of plaintiff in error to vacate and set aside an order of the trial court approving the receiver's report and allowing the fee; and in the motion the allowance of a fee was attacked on the sole ground that the duties performed, and for which the defendant in error had been allowed a fee as receiver, came within her duties as court clerk.

In the case of Threadgill v. Colcord, Receiver, 16 Okla. 447-456, 85 Pac. 703, Threadgill requested the appointment of a general receiver, and the court appointed Colcord a party to the suit and therefore ineligible by statute. One Bell was appointed as special master to sell the property, and he performed that service. Threadgill attacked the sale on the grounds that Colcord was a party to the action, and therefore could not be appointed receiver, and further that the special master failed to take an oath and execute a bond as such. This court said that Threadgill had not only applied for and consented to the appointment of a receiver, and therefore had notice, actual and constructive, of everything that was done in the case, but also, so far as the record showed, he made no objection to the appointment of Colcord as receiver or to the appointment of Bell as special master; and that the record was silent as to any objection being made to Bell's giving no bond or taking an oath. The court held that if Threadgill had any objection to make in regard to these matters, it was his duty to urge them at the time the supposed errors were made, and denied the contention of Threadgill.

In this case the record shows that plaintiff in error requested the appointment of a receiver; the court appointed the clerk, and in the motion of plaintiff in error directed against the allowance of the fee, we see that he says he agreed to her appointment because it would obviate the necessity of a receiver's bond. It will be seen that he is in no position to say that she should not be allowed a fee for the services performed, which were not within her duties as court clerk.

A party will not be permitted to urge a

244

different theory on appeal from that on which he submitted his cause in the trial court. Abraham v. Wasaff, 111 Okla. 165, 239 Pac. 138; Armstrong v. Green, 113 Okla. 254, 241 Pac. 789; Beatty v. Beatty, 114 Okla. 5, 242 Pac. 766.

The question tried partakes of the nature of an equity proceeding. The report of the receiver shows that she collected and disbursed the entire amount of $5,299.88, as receiver, and the court approved the report and allowed her a fee of $250. It is evident that the court allowed her this fee on the theory that the entire service by her was as receiver; but as to the two larger items, we have concluded she acted as court clerk, and as to the smaller item she acted as receiver, and it therefore becomes necessary that the judgment be modified to allow her a fee of $100 for her proper services as receiver, and as so modified, the judgment is affirmed, and the costs herein to be taxed against the plaintiff in error. It is so ordered.

BENNETT, FOSTER, HALL, and HERR. Commissioners, concur.

By the Court: It is so ordered.